# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

NO. 15-1357

CRYSTAL D. SOUTHALL-NORMAN, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 26, 2016                                   Decided December 15, 2016)

*Christian A. McTarnaghan*, with whom *Michael S. Just* was on the brief, both of Providence, Rhode Island, for the appellant.

*Omar Yousaf*, with whom *Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Chief Counsel, and *Kenneth A. Walsh*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before SCHOELEN, BARTLEY, and GREENBERG, *Judges*.

BARTLEY, *Judge*: Veteran Crystal D. Southall-Norman appeals through counsel a January 5, 2015, Board of Veterans' Appeals (Board) decision denying entitlement to an initial compensable disability evaluation for a bilateral foot disability, to include hallux valgus[1] and pes planus, prior to June 2, 2014; and a separate evaluation for impairment of sphincter control related to service-

---

[1]"Hallux valgus" is "medial deviation of the first metatarsal and lateral deviation of the great toe," which "can lead to painful motion of the joint and shoe wear difficulty." *Hallux Valgus*, AM. ORTHOPAEDIC FOOT & ANKLE SOC'Y, http://www.aofas.org/PRC/conditions/Pages/Conditions/Hallux-Valgus.aspx (last visited Oct. 27, 2016). "The structures directly involved in a hallux deformity include the first metatarsophalangeal (MTP) joint, the abductor and adductor hallicus tendons, the hallucal sesamoid complex, the medial and lateral MTP joint capsules, the first tarsometatarsal joint and the gastrocsoleus complex." *Id*.; *see* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 818 (32d ed. 2012) [hereinafter DORLAND'S] (defining "hallux valgus" as "angulation of the great toe away from the midline of the body, or toward the other toes; the great toe may ride under or over the other toes").

connected hemorrhoids. Record (R.) at 2-20.[2]  This matter was referred to a panel of the Court, with oral argument, to address whether the Board is required to consider and apply 38 C.F.R. § 4.59 when evaluating a musculoskeletal disability under a diagnostic code (DC) that is not predicated on range of motion measurements. For the reasons that follow, the Court will set aside the portions of the January 5, 2015, Board decision denying entitlement to an initial compensable evaluation for a bilateral foot disability prior to June 2, 2014, and a separate evaluation for impairment of sphincter control and remand those matters for readjudication consistent with this decision.

## I.  FACTS

Ms. Southall-Norman served on active duty in the U.S. Marine Corps from February 2000 to October 2007. R. at 23. While in service, she filed a June 2007 claim for service connection for, inter alia, a bilateral foot disability and hemorrhoids, R. at 1137-47, and underwent a July 2007 VA general medical examination, R. at 1086-92. She reported persistent hemorrhoids with fecal leakage "occur[ring] less than 1/3 of the day in small amounts," but indicated that "a pad [was] not needed." R. at 1087.  She also reported bunions on both feet, which caused constant, localized pain exacerbated by physical activity and wearing high heels. *Id.*  A physical examination of the feet revealed tenderness bilaterally, but no pain on motion. R. at 1090.  The examiner diagnosed persistent hemorrhoids with rectal pain and bilateral hallux valgus with pain on prolonged standing and wearing high heels. R. at 1092.  Shortly after service, at a December 2007 private medical appointment, Ms. Southall-Norman reported hemorrhoid pain and a "small amount of pus and blood with wiping only," but denied bloody stools. R. at 935.

In March 2008, a VA regional office (RO) granted service connection for bilateral hallux valgus and external hemorrhoids and assigned noncompensable evaluations for those conditions under 38 C.F.R. §§ 4.71a, DC 5280 (hallux valgus), and 4.114, DC 7336 (hemorrhoids, external or internal), respectively, effective October 10, 2007, the day after separation from service. R. at 1065-

---

[2]The Board also denied entitlement to an initial evaluation in excess of 50% for a bilateral foot disability, to include hallux valgus and pes planus, since June 2, 2014, and an initial evaluation in excess of 10% for hemorrhoids. R. at 7-9, 18-19. Because Ms. Southall-Norman has declined to challenge those portions of the Board decision, the appeal as to those issues will be dismissed. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc) (declining to review the merits of an issue not argued on appeal and dismissing that portion of the appeal); *Cacciola v. Gibson*, 27 Vet.App. 45, 48 (2014) (same).

84. Ms. Southall-Norman timely disagreed with the assigned evaluations, asserting, inter alia, that she has "[e]xternal hemorrhoids [with] constant bleeding or leaking." R. at 1055. In November 2008, she submitted a statement that her external hemorrhoids "leave[] horrible stains in [her] under[]garments" and were "constantly oozing pus or bleeding," R. at 1039. The RO issued a Statement of the Case in September 2009 denying compensable evaluations for both conditions, R. at 817-37, and the veteran perfected her appeal to the Board in November 2009, R. at 815-16.

In August 2011, Ms. Southall-Norman was afforded a VA rectal examination and complained of rectal pain, swelling, and bleeding. R. at 795. The examiner did not find impairment of sphincter control or fecal leakage. R. at 796-97.

The next month, the veteran underwent a VA foot examination and reported bilateral foot pain and cramping when standing and walking. R. at 764. A physical examination revealed bilateral forefoot pain on manipulation, but no additional functional loss due to pain, R. at 765, and x-rays showed no significant bone or joint abnormality and unremarkable soft tissues, R. at 768. The diagnosis was bilateral hallux valgus and pes planus. R. at 766.

In October 2013, Ms. Southall-Norman testified at a Board hearing that she experienced constant bilateral foot pain, including while standing and walking and when at rest. R. at 1183. She also stated that, five or six years earlier, her hemorrhoid condition worsened and started causing fecal leakage and that she has been wearing pads every day since then to prevent staining. R. at 1185-87.

In February 2014, the Board issued a decision that granted a 10% initial evaluation, but no higher, for hemorrhoids, and remanded the claim for an initial compensable evaluation for a bilateral foot disability to obtain another VA examination. R. at 592-605. Ms. Southall-Norman appealed the denial of a higher hemorrhoid evaluation and, in October 2014, the Court granted a joint motion for remand (JMR) in which the parties stipulated that the Board had erred in failing to consider whether the veteran was entitled to a separate evaluation for loss of sphincter control. R. at 470-75. The JMR noted the veteran's reports of fecal leakage at the July 2007 VA examination and the October 2013 Board hearing and directed the Board to address the credibility and probative value of those reports in light of the fact that the DC for impairment of sphincter control, 38 C.F.R. § 4.114, DC 7332, "does not explicitly require that leakage be confirmed by objective findings." R. at 472.

In the meantime, in June 2014, Ms. Southall-Norman was afforded a VA foot examination pursuant to the February 2014 Board remand. R. at 571-76. She reported bilateral foot pain on weight-bearing, R. at 572, which was confirmed by a physical examination, R. at 574. The examiner diagnosed bilateral hallux valgus and pes planus, R. at 571, and opined that it was at least as likely as not that bilateral pes planus was etiologically related to the service-connected bilateral hallux valgus, R. at 576. Based on that examination, the RO in September 2014 added bilateral pes planus to the veteran's current service-connected bilateral foot disability and assigned a 50% evaluation under § 4.71a, DC 5276 (flatfoot, acquired), effective June 2, 2014, the date of the examination. *See* R. at 3.[3]

The case was subsequently returned to the Board and, in January 2015, it issued the decision currently on appeal. R. at 2-20. Regarding the bilateral foot disability, the Board found that the evidence of record did not establish entitlement to a compensable evaluation prior to June 2, 2014, under either DC 5276 or 5280 because, during that period, her pes planus manifested in mild symptoms relieved by built-up shoe or arch support and her hallux valgus was mild or moderate and did not require surgery. R. at 17-18. Although the Board considered the veteran's complaints of pain, R. at 18, it did not mention § 4.59 in evaluating her bilateral foot disability.

As to hemorrhoids, the Board found that Ms. Southall-Norman was not entitled to a separate evaluation for sphincter impairment because her reports of fecal leakage were inconsistent throughout the claim period and contradicted by the medical evidence of record. R. at 10-11. The Board also noted that Ms. Southall-Norman did not always differentiate between fecal leakage and other types of leakage and found that, to the extent that her complaints related solely to fecal leakage, they were insufficient to demonstrate constant slight or occasional moderate fecal leakage required for a compensable evaluation under DC 7332. R. at 11-12. This appeal followed.

---

[3]The record before the Court does not contain a copy of the September 2014 RO decision.

## II. ANALYSIS

### A. Bilateral Foot Disability

Ms. Southall-Norman argues that the Board provided inadequate reasons or bases for denying an initial compensable evaluation for her bilateral foot disability prior to June 2, 2014, because it failed to discuss § 4.59, even though the record contained evidence of foot pain on weight bearing, walking, standing, and manipulation. Appellant's Brief (Br.) at 6-10. The Secretary disputes this contention and asserts that the Board was not required to address § 4.59 because it only applies when evaluating a joint disability under a DC predicated on range of motion measurements, and DCs 5276 and 5280 do not mention range of motion. Secretary's Br. at 7-10. The Secretary alternatively argues that, to the extent that § 4.59 is ambiguous on this point, the Court should defer to his reasonable interpretation of that regulation as set forth in the *VA Adjudication Procedures Manual* (M21-1), pt. III, subpt. iv, ch. 4, § A(1)(m), and its predecessors. *Id*. at 7-9. He also contends that, even if § 4.59 were broadly applicable to the evaluation of all musculoskeletal disabilities regardless of the content of the relevant DCs, the medical evidence of record in this case does not reflect painful motion sufficient to entitle the veteran to a compensable evaluation for her bilateral foot disability. *Id*. at 10-11. Ms. Southall-Norman responds that the Secretary's interpretation of § 4.59 is inconsistent with the regulation's plain language, which does not contain any limitation as to its applicability. Reply Br. at 1-2. In the alternative, she argues that the Secretary's proffered interpretation is not entitled to deference because it does not reflect his considered view on the matter, as evinced by the contrary positions taken by the Secretary at oral argument in *Petitti v. McDonald*, 27 Vet.App. 415 (2015), and in *Ebron v. Shinseki*, No. 13-1296, 2014 WL 1778434 (Vet. App. May 6, 2014) (mem. dec.), and *Davis v. Shinseki*, No. 12-2013, 2013 WL 6622931 (Vet. App. Dec. 17, 2013) (mem. dec.). *See* July 18, 2016, Notices of Supplemental Authority.

The parties' dispute comes down to the proper interpretation of § 4.59 and, therefore, we must begin with an examination of the language of that regulation. *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) ("The starting point in interpreting a statute [or regulation] is its language."); *Petitti*, 27 Vet.App. at 422 ("Regulatory interpretation begins with the language of the regulation, the plain meaning of which is derived from its text and its structure."). If the plain meaning of § 4.59 is clear from its language, then that meaning controls and "that is 'the end of the

matter.'" *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)); *see Pacheco v. Gibson*, 27 Vet.App. 21, 25 (2014) (en banc). If, however, the language is ambiguous, then the Court must defer to the agency's interpretation of its regulation unless that interpretation is inconsistent with the language of the regulation, is otherwise plainly erroneous, or does not represent the agency's considered view on the matter. *See Auer v. Robbins*, 519 U.S. 452, 461-62 (1997); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *Smith v. Nicholson*, 451 F.3d 1344, 1349 (Fed. Cir. 2006); *Petitti*, 27 Vet.App. at 423.

Section 4.59 "concerns painful motion of the musculoskeletal system generally," *Correia v. McDonald*, 28 Vet.App. 158, 165 (2016), and "is one of several regulations that precede the rating schedule for the musculoskeletal system and explain how to arrive at proper evaluations under the DCs appearing in [that portion of the] rating schedule," *Petitti*, 27 Vet.App. at 424. *See* 38 C.F.R. §§ 4.40-4.73 (provisions organized under the subheading, "The Musculoskeletal System"). Section 4.59, entitled "Painful motion," provides in full:

> With any form of arthritis, painful motion is an important factor of disability, the facial expression, wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to affected joints. Muscle spasm will greatly assist the identification. Sciatic neuritis is not uncommonly caused by arthritis of the spine. The intent of the schedule is to recognize painful motion with joint or periarticular[4] pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. Crepitation either in the soft tissues such as the tendons or ligaments, or crepitation within the joint structures should be noted carefully as points of contact which are diseased. Flexion elicits such manifestations. The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint.

38 C.F.R. § 4.59 (2016).

The plain language of § 4.59 indicates that the regulation is not limited to the evaluation of musculoskeletal disabilities under DCs predicated on range of motion measurements. Section 4.59 states that one intent of the musculoskeletal portion of the rating schedule "is to recognize painful motion" of musculoskeletal conditions "as productive of disability." *Id*. The regulation declares that

---

[4]"Periarticular" means "around a joint." DORLAND'S at 1411.

one way to achieve this intent is to assign the minimum compensable evaluation available under the applicable DC whenever the evidence of record reveals that the joint or periarticular region at issue is actually painful, unstable, or malaligned. *Id*. "It is the intention to recognize actually painful, unstable, *or* malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint." *Id*. (emphasis added).

In other words, § 4.59 does not, as the Secretary contends, condition the award of a minimum compensable evaluation for a musculoskeletal disability on the presence of range of motion measurements in that DC; rather, it conditions that award on evidence of an actually painful, unstable, or malaligned joint or periarticular region and the presence of a compensable evaluation in the applicable DC. *See Sowers v. McDonald*, 27 Vet.App. 472, 475, 481 (2016) (explaining that "§ 4.59 employs conditional language that must be read in conjunction with the appropriate DC to be understood"). Thus, the plain language of § 4.59 indicates that it is potentially applicable to the evaluation of musculoskeletal disabilities involving joint or periarticular pathology that are painful, whether or not evaluated under a DC predicated on range of motion measurements. The Court therefore rejects the Secretary's attempts to read into the regulation a limitation to its applicability that is simply not there. *See Ortiz-Valles v. McDonald*, 28 Vet.App. 65, 71 (2016) (noting that 38 C.F.R. § 4.16(a) does not contain limiting language regarding marginal employment and declaring that "[t]he Secretary cannot simply add restrictions to a regulation where they do not exist"); *Burton v. Shinseki*, 25 Vet.App. 1, 5 (2011) (declining to infer a limitation from the text of § 4.59 and holding that, although the first and third sentences mention arthritis, the regulation is applicable in "non-arthritis contexts"); *cf. Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.").

But, even if § 4.59 were ambiguous as to its applicability, the Court still would not defer to the Secretary's proffered interpretation, because it does not reflect the agency's considered view on the matter, as he has not consistently adhered to that interpretation. Although the M21-1 indicates that § 4.59 does not apply to DCs not predicated on loss of range of motion, M21-1, pt. III, subpt.

7

iv, ch. 4, § A(1)(m),[5] during oral argument in *Petitti*, the Court asked the Secretary whether § 4.59 "appl[ied] to [DCs] that have no specific requirement for limitation of motion, as well as those that do." The Secretary replied that "[t]here could be instances where painful motion could be relevant for a compensable rating based on the facts of the case if it's not specifically listed in the [DC]," and cited the DC for hallux valgus–one of the DCs at issue here–as an example of a DC to which § 4.59 applied even though it was not predicated on range of motion findings. *Petitti* Oral Argument at 31:39-52. This statement is directly contrary to the Secretary's arguments in this case and undercuts his reliance on the M21-1 as evidence that his current litigating position represents his considered view as to the applicability of § 4.59. *See Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 156 (1991) (explaining that "'litigating positions' are not entitled to deference when they are merely appellate counsel's 'post hoc rationalizations' for agency action").

Likewise, Ms. Southall-Norman notified the Court of at least two nonprecedential decisions where the Secretary conceded that the Board provided inadequate reasons or bases when it failed to address entitlement to a compensable evaluation under § 4.59 for bilateral foot disabilities evaluated under DCs 5276 and 5284 (other foot injuries). *Ebron*, No. 13-1296, 2014 WL 1778434; *Davis*, No. 12-2013, 2013 WL 6622931; *cf. Hudgens v. McDonald*, 823 F.3d 630, 638-39 (Fed. Cir. 2016) (examining Board decisions and the Secretary's litigating position in nonprecedential decisions of the Court to determine whether the Secretary's proffered interpretation of a regulation was entitled to *Auer* deference).

Given the inconsistency in the Secretary's positions regarding the applicability of § 4.59 in this case and the aforementioned cases, even if the language of the regulation were not plain, the Court could not conclude that the Secretary's current interpretation of § 4.59 represented his

---

[5]This section of the M21-1 directs that "[f]unctional loss as discussed in 38 CFR 4.40, 38 CFR 4.45, and 38 CFR 4.59 is not used to evaluate musculoskeletal conditions that do not involve ROM [(range of motion)] findings." M21-1, pt. III, subpt. iv, ch. 4, § A(1)(m). Although the Court need not address the merits of the M21-1 provision to decide this case, the Court reminds the Secretary that § 4.59, which governs "painful motion," provides an avenue for obtaining a minimal compensable evaluation irrespective of whether pain in a joint or periarticular region causes functional loss. *See Petitti*, 27 Vet.App. at 426 n.8 (differentiating between §§ 4.40 and 4.45, consideration of which "might result in a disability rating higher than the minimum disability rating for a particular joint" based on functional loss, and § 4.59, consideration of which might result in "the minimum disability rating for painful motion"); *Mitchell v. Shinseki*, 25 Vet.App. 32, 37 (2011) (stating that, "although pain may cause a functional loss, pain *itself* does not constitute functional loss") (emphasis in original)).

considered view on the matter. *See Correia*, 28 Vet.App. at 167-68 (concluding that the Secretary's proffered interpretation to the Court of a different portion of § 4.59 did not represent his considered view of § 4.59 because it was inconsistent with prior positions he took in other appeals before the Court where he had conceded error based on a contrary interpretation of § 4.59). Therefore, even if § 4.59 were ambiguous as to whether it applied to the evaluation of musculoskeletal disabilities only under DCs predicated on range of motion measurements, *Auer* deference to the Secretary's interpretation in this regard would not be warranted. *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) (explaining that "deference is . . . unwarranted when there is reason to suspect that the agency's interpretation does not reflect the agency's fair and considered judgment on the matter in question," such as "when the agency's interpretation conflicts with a prior interpretation, or when it appears that the interpretation is nothing more than a convenient litigating position, or a post hoc rationalization advanced by an agency seeking to defend past agency action against attack" (internal quotations and alterations omitted)); *Correia*, 28 Vet.App. at 168.

In sum, the plain language of § 4.59 indicates that it is applicable to the evaluation of musculoskeletal disabilities involving actually painful, unstable, or malaligned joints or periarticular regions, regardless of whether the DC under which the disability is being evaluated is predicated on range of motion measurements. The Board was therefore required to address § 4.59 in deciding Ms. Southall-Norman's entitlement to an initial compensable evaluation for a bilateral foot disability under DCs 5276 and 5280 prior to June 2, 2014, and its failure to do so renders inadequate its reasons or bases for denying a compensable evaluation. *See Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991) (holding that the Board errs when it fails to address all potentially applicable provisions of law and regulation). Although the Secretary argues that the Board was not obligated to discuss § 4.59 because the evidence of record does not reflect painful motion, Secretary's Br. at 10-11, the record contains competing evidence on that point. *Compare* R. at 572, 764, 1087, 1183 (veteran's complaints of foot pain with physical activity), *with* R. at 1090 (July 2007 VA medical examinations showing no pain on motion). *See also Petitti*, 27 Vet.App. at 425 (finding the terms "painful motion" and "actually painful" joints to be synonymous and stating that the Court "cannot conceive of a situation in which an 'actually painful' joint would not necessarily connote a joint that was painful on motion"). That threshold question, as well as the related but unaddressed question of whether the

9

record reflects an actually painful, unstable, or malaligned joint or periarticular region sufficient to trigger application of § 4.59, involves factfinding and weighing of evidence that is best left to the Board. *See Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) (reiterating that "the evaluation and weighing of evidence are factual determinations committed to the discretion of the factfinder"); *Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) (noting "the general rule that appellate tribunals are not appropriate fora for initial fact[]finding"). Accordingly, the Court concludes that remand is warranted to adequately address those questions in the first instance. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

### B. Impairment of Sphincter Control

Ms. Southall-Norman next argues that the Board provided inadequate reasons or bases for its decision that she was not entitled to a separate compensable evaluation for impairment of sphincter control because it improperly found her October 2013 Board hearing testimony regarding onset of fecal leakage inconsistent with her prior statements on that issue. Appellant's Br. at 10-13. She asserts that, contrary to the Board's finding, there is nothing inconsistent between her statement at the October 2013 hearing that she began experiencing fecal leakage 5 or 6 years earlier–i.e., between October 2007 and 2008–and her statement at the July 2007 VA examination–more than 6 years before October 2013–that she had fecal leakage but did not need to wear an absorbent pad. *Id.* at 11-12. The Secretary responds that the veteran failed to carry her burden of demonstrating error because the Board's negative credibility finding was based on numerous inconsistencies in her statements about the onset, degree, and type of leakage and the need to wear absorbent materials and that, in any event, the evidence establishes that she does not have loss of sphincter control. Secretary's Br. at 12-15. In reply, Ms. Southall-Norman contends that, contrary to the Secretary's argument, the Board found that she had sphincter impairment during the relevant period, which is a favorable finding that cannot be disturbed on appeal. Reply Br. at 4. She asserts that the actual issue on appeal is whether she had fecal leakage warranting a separate compensable evaluation and she reiterates that the Board did not lay a proper foundation for finding her lay statements not credible on that matter. *Id.* at 4-6. The Court agrees with the veteran.

10

In rendering its decision, the Board is required to provide a written statement of reasons or bases for its "findings and conclusions[] on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(d)(1). The statement must be adequate to enable a claimant to understand the precise basis for the Board's decision and to facilitate review in this Court. *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of evidence, account for evidence that it finds persuasive or unpersuasive, and provide reasons for rejecting any material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). When assessing the credibility of lay evidence, the Board may consider factors such as facial plausibility, bias, self-interest, and consistency with other evidence of record. *Buchanan v. Nicholson*, 451 F.3d 1331, 1337 (Fed. Cir. 2006); *Caluza*, 7 Vet.App. at 511.

The Board found that there were inconsistencies in Ms. Southall-Norman's lay statements, which led it to conclude that "many of her assertions overstate the scope and/or severity of her symptoms." R. at 10. One of the putative inconsistencies identified by the Board was that at the July 2007 VA examination Ms. Southall-Norman described her fecal leakage as slight and stated that it did not require a pad, but at the October 2013 Board hearing she stated that she had worn liners for fecal leakage for "about 5, 6 years." R. at 11, 1187. However, the fact that the veteran denied using a pad in July 2007 is not inconsistent with her later report in October 2013 that she began using a pad 5 to 6 years earlier–i.e., after July 2007 at some point between October 2007 and October 2008. In fact, Ms. Southall-Norman's earlier statement is *consistent* with her later testimony that her condition worsened after service, forcing her to start wearing pads after separation, because the July 2007 examination was conducted while she was still in service. R. at 1186. Thus, contrary to the Board's finding, there does not appear to be any inconsistency in Ms. Southall-Norman's reports of when she began using absorbent materials because of fecal leakage, and the Board's reasons or bases for impugning her credibility on that basis are inadequate. *See Fountain v. McDonald*, 27 Vet.App. 258, 273-75 (2015) (concluding that the Board erred in not adequately explaining several putative discrepancies between the appellant's lay statements and the other evidence of record); *Caluza*, 7 Vet.App. at 506; *Gilbert*, 1 Vet.App. at 57.

11

Moreover, the Board improperly faulted Ms. Southall-Norman for not differentiating between the types of leakage that she experienced over the years, declaring that the August 2011 VA examiner's finding that the veteran had no fecal leakage "calls into question the assertion that all leakage was constant, much less that only pus and stool leakage were constant." R. at 12. Although the Board is allowed to find a veteran not credible based on inconsistencies between medical evidence and lay evidence, *see Buchanan*, 451 F.3d at 1337; *Parseeya-Picchione v. McDonald*, 28 Vet.App. 171, 175-76 (2016); *Caluza*, 7 Vet.App. at 511, it must account for the potentially favorable material evidence of record when doing so. In this case, the Board did not mention the veteran's report to the July 2007 VA examiner that she had fecal leakage every day, R. at 1087, or her October 2013 Board hearing testimony that she experienced fecal leakage after bowel movements, R. at 1184-85. This evidence lends support to her later statements regarding fecal leakage that the Board discounted, and the Board's failure to account for that favorable material evidence further diminishes its reasons or bases for finding the veteran not credible. *See Caluza*, 7 Vet.App. at 506; *Gilbert*, 1 Vet.App. at 57.

Given the foregoing inadequacies in the Board's credibility analysis, the Court will not accept the Secretary's invitation to find those reasons-or-bases errors harmless based on the Board's finding that "[a]nal sphincter impairment has not been established." R. at 15; *see* Secretary's Br. at 14-15. Although the August 2011 VA examination found no impairment of sphincter control, R. at 797, the record is replete with other evidence suggesting such impairment, which the Board improperly discounted for the reasons set forth above. *See* R. at 1087 (July 2007 VA examination report reflecting daily fecal leakage), 1039 (veteran's November 2008 report that her hemorrhoids caused "horrible stains in [her] under[]garments"), 1184-87 (veteran's October 2013 Board hearing testimony differentiating between bleeding, pus, and fecal leakage and indicating that she needed to wear absorbent materials every day to prevent fecal leakage from soiling her undergarments). Accordingly, the Court will remand the veteran's impairment of sphincter control claim because the Court cannot conclude that the Board's reasons or bases errors in assessing the veteran's credibility were harmless. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004) ("Where the effect of an error on the outcome of a proceeding is unquantifiable, however, we will not speculate as to

12

what the outcome might have been had the error not occurred."); *Arneson v. Shinseki*, 24 Vet.App. 379, 389 (2011) (finding prejudice when error "could have altered' the Board's determinations); *Tucker*, 11 Vet.App. at 374.

### III. CONCLUSION

Upon consideration of the foregoing, the portions of the January 5, 2015, Board decision denying entitlement to an initial compensable evaluation for a bilateral foot disability prior to June 2, 2014, and a separate evaluation for impairment of sphincter control are SET ASIDE and those matters are REMANDED for readjudication consistent with this decision. On remand, Ms. Southall-Norman may present any additional arguments and evidence to the Board in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for [the Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

The balance of the appeal is DISMISSED.