# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-4053

JOSEPH SPELLERS, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 19, 2018)                                        Decided September 7, 2018)

*Dana N. Weiner* and *Alyse E. Galoski*, with whom *Lauren E. Robbins* was on the brief, all of Providence, Rhode Island, for the appellant.

*Anthony D. Ortiz* and *Carolyn F. Washington*, with whom *James M. Byrne*, General Counsel; and *Mary Ann Flynn*, Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before BARTLEY, ALLEN, and MEREDITH, *Judges*.

ALLEN, *Judge*: The appellant, Joseph Spellers, is a veteran of the U.S. Army with honorable service. He is service connected for bilateral lower extremity sciatica. He also uses a cane and walker as a result (at least in part) of this condition. He timely appeals a November 17, 2016, Board of Veterans' Appeals (Board) decision denying referral for consideration of an extraschedular rating under 38 C.F.R. § 3.321(b)(1).

This matter was submitted to a panel of the Court principally to address whether the Board must consider the appellant's use of assistive devices, such as a cane or walker, in its extraschedular analysis of his sciatica. As we will further explain, because of the nature of the criteria contained in 38 C.F.R. § 4.124a, Diagnostic Code (DC) 8520 and 38 C.F.R. § 4.120, we hold that the schedular rating criteria contemplate the symptoms necessitating the use of assistive devices, as well as the severity of those symptoms, and thus referral for extraschedular consideration on that basis was not warranted. But, remand is nonetheless warranted because the Board gave an inadequate statement of reasons or bases for finding the appellant's report of side effects from his pain medications not credible. Therefore, the Court will set aside the November 2016 Board decision on appeal and remand this matter for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

In January 2006, VA granted service connection to the appellant for a low back strain and eventually awarded a 20% disability rating. Following VA examinations, VA also awarded 10% disability ratings for sciatica of each of his legs in November 2009. The appellant appealed these ratings to the Board, which denied an increase (including on an extraschedular basis) in a May 2015 decision. He appealed the Board decision only to the extent that he had been denied referral for consideration of an extraschedular rating. In March 2016, the Court granted a joint motion for partial remand on that issue.

In the November 17, 2016, decision on appeal, the Board declined to refer the appellant's claim for consideration of a disability rating higher than 10% for right and left lower extremity sciatica on an extraschedular basis. The Board considered the appellant's use of a cane and walker and concluded that, although they are "not specifically listed in the rating criteria for evaluating neurologic disabilities, assistive devices are provided to alleviate the presence of symptoms and/or functional limitations caused by an individual's disability." Record (R.) at 11. The Board found that the appellant's symptoms that required the use of assistive devices "are fully contemplated by the rating criteria and associated regulations" and "the use of such assistive device directly addresses a veteran's functional limitations." R. at 12. Therefore, the Board concluded, "the use of such devices does not create an exceptional disability picture such that the rating criteria is inadequate." *Id.* The Board also considered the appellant's use of pain medication and its associated side effects in connection with its extraschedular analysis but found that his reports were not credible. The Board based its credibility determination in large measure on the appellant's failure to report certain side effects during treatment at various times, as purportedly required under a patient agreement he signed. Finally, the Board considered the collective impact of the appellant's service-connected disabilities and concluded that referral for extraschedular consideration was not warranted on this basis because all his symptoms are contemplated by the rating criteria for each disability individually.

## II. ANALYSIS

Our analysis begins with a discussion of the caselaw governing extraschedular analysis and the framework provided for the schedular criteria for sciatica. We then address the appellant's argument that the Board failed to properly consider his use of assistive devices in this context.

Next, we discuss the Board's credibility determination relating to the side effects of the appellant's pain medication and, in that context, the appellant's argument that the Board failed to address the second part of an extraschedular analysis. Finally, we briefly address the appellant's argument that the Board erred in assessing whether an extraschedular referral was warranted based on his combined service-connected disabilities.

### A. Use of Assistive Devices and Diagnostic Code 8520

#### 1. Extraschedular Framework

Service-connected disabilities are assigned ratings to adequately compensate veterans. 38 C.F.R. § 3.321(a) (2018); *King v. Shulkin*, 29 Vet.App. 174, 178-79 (2017). When the corresponding or analogous DC for evaluating a disability is insufficient to compensate a veteran for a service-connected disability, *see* 38 C.F.R. §§ 4.20, 4.27 (2018), extraschedular evaluation may be appropriate. For these exceptional cases, 38 C.F.R. § 3.321(b)(1) provided, in relevant part:

> To accord justice . . . to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.[1]

In *Thun v. Peake*, this Court held that determining whether a veteran is entitled to a referral for consideration of extraschedular rating under § 3.321(b) requires a three-part inquiry. 22 Vet.App. 111, 115 (2008), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009). The first element requires the Board to determine whether the "evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate." *Id.* This requires the Board to compare a veteran's specific symptoms

---

[1] This version of § 3.321(b)(1) was in effect until January 8, 2018, when an amended version took effect. The revised version purportedly eliminates the possibility of an extraschedular referral for the collective impact of service-connected disabilities. A regulatory challenge is currently pending before the Federal Circuit (*National Organization of Veterans' Advocates, Inc. v. Wilkie*, No. 18-1391) and the new regulation is at issue in a case pending before a panel of this Court (*Thurlow v. Wilkie*, No. 16-3633).

and their severity with those contemplated by the rating schedule. *King*, 29 Vet.App. at 178-79. If the Board determines that a veteran's symptoms or their severity is not contemplated by the rating schedule, the second element requires the Board to "determine whether the claimant's exceptional disability picture exhibits other related factors," such as marked interference with employment or frequent periods of hospitalization. *Thun*, 22 Vet.App. at 116. Finally, if the first two elements are met, the final element mandates that the Board refer the claim to the Under Secretary for Benefits or the Director of Compensation Service for a determination about whether an extraschedular rating is warranted. *Id.*

The Court has emphasized that the *Thun* "steps" are actually three necessary "elements" of an extraschedular rating analysis. *Anderson v. Shinseki*, 22 Vet.App. 423, 427 (2009). Moreover, though the first and second elements are interrelated, they involve distinct analyses such that "[i]f either element is not met, then referral for extraschedular consideration is not appropriate." *Yancy v. McDonald*, 27 Vet.App. 484, 494-95 (2016).

The Board's determination of whether referral for extraschedular consideration is appropriate is a finding of fact that the Court reviews under the "clearly erroneous" standard of review. *Thun*, 22 Vet.App. at 115. "'A factual finding' 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, (1948)). Despite this deferential standard of review of the factual determinations the Board makes in an extraschedular analysis, the Court reviews legal questions implicated in the Board's decision de novo. *See Butts v. Brown*, 5 Vet.App. 532, 538 (1993) (en banc).

What is contemplated under the applicable rating criteria sets the stage for an extraschedular analysis. Thus, we must determine what the applicable DCs contemplate with respect to the appellant's sciatica. We turn to that issue next.

*2. Schedular Criteria for Sciatica*

The appellant's bilateral sciatica is rated under the portion of the rating schedule concerning "Neurological Conditions and Convulsive Disorders." 38 C.F.R. § 4.124a (2018). A note preceding the various DCs under this regulation provides that "disabilit[ies] from the following diseases and their residuals may be rated from 10[%] to 100[%] in proportion to the impairment of motor, sensory, or mental function." *Id.* This note echoes another general principle for rating

4

neurological conditions, that "[d]isability in this field is ordinarily to be rated in proportion to the impairment of motor, sensory or mental function." 38 C.F.R. § 4.120 (2018). It further notes that, when rating nerve injuries, "attention should be given to the site and character of the injury, *the relative impairment in motor function*, trophic changes, or sensory disturbances." *Id.* (emphasis added).

Specifically, sciatica is rated under DC 8520 for diseases of the sciatic nerve, which reads as follows:

Sciatic nerve

Paralysis of:
Complete; the foot dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost…………………………………………………………………..80
Incomplete:
     Severe, with marked muscular atrophy…………………………...60
     Moderately severe…………………………………………………..40
     Moderate…………………………………………………………20
     Mild…………………………………………………………………10

38 C.F.R. § 4.124a, DC 8520.

### 3. Appellant's Argument about Assistive Devices

The appellant argues that the Board failed to explain how DC 8520 contemplates the use of assistive devices, such as a cane or walker, for his bilateral sciatica such that extraschedular referral is not warranted. He asserts that the Board misinterpreted § 3.321(b)(1) in finding that assistive devices address functional limitations that are contemplated by the rating criteria. Furthermore, he argues that, even if the use of assistive devices was contemplated as a symptom, the Board was still required to discuss use of assistive devices in the extraschedular analysis, because use of such devices indicates the severity of his condition.[2]

To address these arguments, we must turn to the schedular criteria to consider how the use of assistive devices fits into those criteria and whether those criteria contemplate the symptoms and severity of those symptoms for which the assistive devices are needed.

---

[2] The appellant also argues that DC 8520 does not contemplate the effects of using assistive devices. The Court addresses this argument in part II.A.6 below.

*4. Symptoms*

The Court reviews the interpretation of regulations de novo. *See Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006); *see also Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004). In this case, 38 C.F.R. § 4.120 sets out basic considerations for rating neurological conditions, specifically, impairment of motor and sensory functions. This provision applies to all DCs listed under the heading "Neurological Conditions and Convulsive Disorders." *Cf. DeLuca v. Brown*, 8 Vet.App. 202, 207 (1995) (holding that an individual DC "does not subsume the functional loss requirements laid out in 38 C.F.R. §§ 4.40 and 4.45," provisions that appear before the listing of DCs in the context of rating musculoskeletal disabilities); *see also Southall-Norman v. McDonald*, 28 Vet.App. 346, 351 (2016) (noting that regulations that immediately precede DCs "explain how to arrive at proper evaluations under the DCs appearing in that portion of the rating schedule" (internal quotation marks and alteration omitted)). Therefore, when rating each neurological condition, one must consider the impairment of, among other factors, motor and sensory functions, as required by § 4.120.

As § 4.120 relates to this matter, the parties agree that its reference to and incorporation of all categories of impairment of motor, sensory, or mental function contemplate all symptoms of sciatica that would necessitate the use of an assistive device such as a cane or walker. *See* Appellant's Supplemental Brief (Br.) at 1; Secretary's Supplemental Br. at 1-2. The Court agrees and holds that § 4.120 contemplates any impairment of motor or sensory function that would require the use of an assistive device such as a cane or walker. Specifically, in this case, the Board noted that "assistive devices are provided to alleviate the presence of symptoms and/or functional limitations caused by an individual's disability." R. at 11. More specifically, the Board stated that a cane is "provided to normalize an abnormal gait pattern that may be limited by pain, weakness, or decreased endurance." R. at 12. The Board further found, and the appellant does not dispute, that his "falls, weakness, give-way, fatigue, and stiffness are all impairments of his motor function" and that "his reports of shooting or radiating pain, numbness, and tingling are examples of sensory disturbances." R. at 11. The Board's findings fall squarely within § 4.120's language about impairment of motor and sensory function. It is difficult for the Court to fathom any use of an assistive device such as a cane or walker that would not be due to symptoms related to impairment of motor or sensory function, especially in the present case.

6

In sum, when considering the first *Thun* element in the context of the evaluation of a neurological condition, one must assess not only whether symptoms are contemplated by the particular DC under which the condition is rated, here, DC 8520, but also whether they are contemplated in the language of the preface to the neurologic and convulsive disorders DCs, that is, in § 4.120. Given the broad nature of that provision, finding symptoms not contemplated by its "impairment of motor, sensory or mental function" language presents quite a challenge. All the symptoms for which a cane or walker could serve as a proxy are contemplated by § 4.120 as impairments of motor and sensory function. In other words, the symptoms of sciatica that cause the appellant to use assistive devices such as a cane or walker are contemplated by the schedular rating criteria and therefore do not satisfy the first part of *Thun*'s first element. However, the second part of *Thun*'s first element requires that we consider whether the rating schedule contemplates the severity of those symptoms. We turn to that subject next.

### 5. Severity

Unlike § 4.120, DC 8520 does not provide a general list of symptoms to gauge the severity of incomplete paralysis of the sciatic nerve, except at the "severe" level, referring only to "marked muscular atrophy."[3] 38 C.F.R. § 4.124a, DC 8520. Instead, for incomplete paralysis, DC 8520 provides that "mild" symptoms yield a 10% rating while "moderate" symptoms warrant 20%. And "moderately severe" symptoms correspond to a 40% rating, with "severe" symptoms "with marked muscular atrophy" warranting 60%.

DC 8520 does not define "mild," "moderate," "moderately severe," or "severe," or generally associate those terms with specific symptoms. This lack of objective criteria for differentiating between the specified severity levels means that any evidence indicating severity of incomplete paralysis of the sciatic nerve is necessarily relevant to the *schedular* rating level. In other words, entitlement to extraschedular referral based on severity is necessarily redundant of the schedular analysis under this DC, at least until the veteran receives the maximum schedular rating for incomplete paralysis of the sciatic nerve.[4]

---

[3] DC 8520 does provide a list of symptoms for complete paralysis of the sciatic nerve, but the appellant does not argue that his disability should be rated at that level.

[4] To be clear, we leave for another day the possibility of extraschedular referral based on severity when an appellant reaches the maximum schedular rating for incomplete paralysis of the sciatic nerve, as this question is not raised by the facts of this case.

Because of the nature of DC 8520, we note that our conclusion does not run afoul of the Court's decision in *King v. Shulkin*, which held that "the availability of higher schedular ratings plays no role in an extraschedular analysis and [] it is inappropriate for the Board to deny extraschedular referral on this basis," 29 Vet.App. at 181. In *King*, the Board found that the appellant was not entitled to an extraschedular rating, in part, because "the rating criteria . . . provide[] for higher ratings for more severe symptoms." *Id.* at 179. In that case, however, the rating schedule did not provide an appropriate remedy, because the appellant could not have received a higher schedular rating based on his existing symptoms. *See* 38 C.F.R. §§ 4.85, 4.86 (2018). Here, on the other hand, if the appellant is correct that "his assigned 10[%] ratings do not contemplate the severity of his bilateral lower extremity sciatica," Appellant's Supplemental Br. at 4, then the rating schedule itself provides the appropriate remedy – assignment of a rating greater than mild.[5] This is so regardless of the reasons why his condition may be worse than mild (here purportedly due to use of assistive devices), because there are no criteria in DC 8520 that would need to be satisfied other than a level of severity worse than mild.

Thus, because the appellant's sciatica is currently rated as "mild," his argument that he is entitled to a higher disability rating on an extraschedular basis as a result of the severity of his condition is, fundamentally, an argument for a higher schedular rating. Given that the appellant previously abandoned his appeal of the assigned schedular rating, that issue is not before the Court, and we will not address it further.

Here, the Board did not specifically address the severity of the appellant's sciatica in the extraschedular context. Yet, we hold that the Board's error in this regard is harmless, as we conclude that, as a matter of law, the severity of the appellant's sciatica for which he uses a cane or walker is contemplated by the very nature of DC 8520, at least at the level at which he is currently rated. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show prejudice as a result of VA error).

---

[5] Here, too, we note that, if the appellant thought that the severity of his sciatica was greater than mild and closer to moderate, for example due to his use of assistive devices, he could have argued pursuant to 38 C.F.R. § 4.7 that his disability picture more nearly approximates the moderate level. Again, this is a schedular consideration.

*6. Other Effects*

In his supplemental brief, the appellant argues that the categories of impairment of motor, sensory, or mental function provided in § 4.120 "do not contemplate the effect of the use of a walker." Appellant's Supplemental Br. at 2. In other words, the appellant asserts that, though the symptoms that led him to use an assistive device in the first place may be contemplated by the rating schedule, the effects of such use are not. In this vein, he argues that the use of an assistive device may cause effects that "are not necessarily contemplated" because "they represent a profound impact on an individual that goes beyond the functional loss that others with the same disability" do not experience. *Id.* Specifically, he notes that the use of a cane or walker "slows the person down; limits him to walking on smooth surfaces; keeps both hands occupied; prevents him from turning quickly, backing up smoothly, squeezing through small spaces, and using stairs; and requires rest." *Id.* The Court first notes that the appellant did not raise this argument in his initial brief and instead asserted it for the first time at oral argument. This Court has discouraged parties from raising arguments for the first time at oral argument, because to do so "does not assist the Court and is unfair to opposing counsel." *Atencio v. O'Rourke*, 30 Vet.App. 74, 85 (2018); *see also Norvell v. Peake*, 22 Vet.App. 194, 201 (2008) (the Court has "repeatedly discouraged parties from raising arguments that were not presented in an initial brief to the Court"). We decline to address this argument but note that the appellant has not alleged any additional symptoms he suffers because of his use of a cane or walker (rather than simply positing hypothetical effects) and has not pointed to anything in the record that the Board could or should have considered regarding possible effects of his using a cane or walker. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant bears burden of demonstrating error on appeal), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

*7. Summary*

In sum, both the symptoms and severity of the appellant's sciatica that require him to use a cane or walker are contemplated by the schedular rating criteria, specifically, in the regulations prefatory to DC 8520, such as § 4.120, and in DC 8520 itself. Therefore, we hold that the Board did not err in its finding that the first element of *Thun* was not met on the ground that the appellant's condition necessitates use of assistive devices. We now turn to the appellant's other arguments.

B. The Board's Credibility Determination

The appellant also argues that the Board failed to provide an adequate statement of reasons or bases for finding that he was not credible to report side effects from his pain medication and thus that extraschedular referral was not warranted. The Board noted that the appellant reported feeling drowsy and having poor concentration as a result of his pain medication. The Board found, however, that these assertions were not supported by the evidence of record because, although he had reported the use of pain medication on multiple occasions, "he did not report any side effects of such medication at those times." R. at 12. The Board further found that the appellant had reported nausea due to his medication but did not mention other symptoms at that time and during subsequent treatment denied side effects. R. at 13. Finally, the Board relied on a July 2009 patient agreement that the appellant signed in which he agreed to report "any significant side effects related to his use of pain medication." *Id.* Based on this evidence, the Board found the appellant's report of side effects not credible because it conflicted with the evidence of record and because he failed to "report these symptoms to treatment providers despite his contractual obligation to do so." *Id.* On this basis, the Board concluded extraschedular referral was not warranted.

As the finder of fact, the Board has a duty to assess the weight and credibility of the evidence. *See Madden v. Gober*, 125 F.3d 1477, 1481 (Fed. Cir. 1997); *Owens v. Brown*, 7 Vet.App. 429, 433 (1995). In making credibility determinations, the Board may consider factors such as facial plausibility, bias, self-interest, and consistency with other evidence of record. *Caluza v. Brown*, 7 Vet.App. 498, 511 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *see also Buchanan v. Nicholson*, 451 F.3d 1331, 1337 (Fed. Cir. 2006). As with all its material determinations of law or fact, the Board's determination as to credibility must be supported by an adequate statement of reasons or bases. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995). The statement of reasons or bases must explain the Board's reasons for discounting favorable evidence. *Thompson v. Gober*, 14 Vet.App. 187, 188 (2000) (per curiam).

The Court agrees with the appellant that the Board failed to provide an adequate statement of reasons or bases for its adverse credibility determination. First, the Board relied on the fact that the appellant had not reported side effects at various treatment appointments. But, those records simply did not mention side effects. It is not clear, therefore, that the appellant was asked about side effects at those times or that he did not actively deny side effects. "[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by

10

contemporaneous medical evidence." *Buchanan*, 451 F.3d at 1337. Rather, the Board must "first establish a proper foundation for drawing inferences against a claimant from an absence of documentation." *Fountain v. McDonald*, 27 Vet.App. 258, 272 (2015). Here, the Board failed to provide the foundation for relying on the medical records' silence on side effects.

Additionally, the Board relied on the July 2009 patient agreement the appellant signed obligating him to report "significant side effects." R. at 1046. The agreement does not define what constitutes "significant side effects," although it lists "potential side effects" such as nausea, dizziness, upset stomach, and hallucinations. *Id.* The list of potential side effects does not include drowsiness or difficulty concentrating, the appellant's reported symptoms. The Court notes that, in January 2012, the appellant reported experiencing nausea as a side effect of his medication. R. at 950. Thus, it is not clear that the appellant understood that he needed to report symptoms not included in the list of potential side effects or why the Board appeared to believe he had such an understanding or obligation.

For these reasons, the Court holds that judicial review is frustrated and remand is warranted for the Board to provide adequate reasons or bases in assessing the appellant's credibility regarding his medication side effects and whether those side effects require extraschedular referral. *See Allday*, 7 Vet.App. at 527; *see also Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate.").

The Court is unable to conclude that the Board's reasons-or-bases error is harmless because the Court cannot say whether extraschedular referral may have been warranted if the appellant's statements regarding his side effects were properly considered. 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"). This is, in part, because the Board, after finding that element one of *Thun* was not satisfied, did not address element two of *Thun*, specifically whether the appellant's sciatica markedly interfered with employment. *See Yancy*, 27 Vet.App. at 494-95. Given that the record contains statements from the appellant that he was terminated from jobs because he was "moving too slowly" and "wasn't physically qualified for the work," R. at 64, it is possible that the Board may have found that the first and second elements of *Thun* were satisfied, and that extraschedular referral was therefore warranted, if the Board had properly considered the appellant's statements regarding medication side effects and their effect on his employment. The Board's failure to do so frustrates the Court's ability to review the decision

on appeal and prevents the Court from concluding that the Board's reasons-or bases-error was not harmful to the appellant.[6] *See Sanders*, 556 U.S. at 409; *Southall-Norman*, 28 Vet.App. at 356 (remanding a claim "because the Court [could not] conclude that the Board's reasons[-]or[-]bases errors in assessing the veteran's credibility were harmless"); *Arneson v. Shinseki*, 24 Vet.App. 379, 389 (2011) (finding prejudice when error "could have altered" the Board's determination).

## C. Other Matters

The appellant also argues that the Board failed to adequately consider the collective impact of his service-connected disabilities in its extraschedular analysis. Here, the Board's credibility determination may affect any future collective-impact analysis because it affects how an individual disability may be assessed. Thus, the Court need not address this argument at this point. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order).

On remand, the appellant may submit additional evidence and argument, including the arguments raised in his briefs to this Court, according to *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order), and the Board must consider any such evidence or argument submitted, *Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Secretary must also proceed expeditiously, in accordance with 38 U.S.C. §§ 5109B and 7112.

## III. CONCLUSION

After consideration of the parties' briefs, oral arguments, the record on appeal, and the governing law, the Court SETS ASIDE the November 17, 2016, Board decision and REMANDS the matter for further proceedings consistent with this opinion.

---

[6] The Court offers no opinion as to whether the appellant's statements are credible or whether *Thun*'s second element is met. These are matters for the Board to address properly in the first instance. *See Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000).