# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 15-0904

Mary Vilfranc, Appellant,

v.

Robert A. McDonald,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued December 6, 2016,                                     Decided January 5, 2017)

*Sarah K. Barr,* of Providence, Rhode Island, and *Robert V. Chisholm* and *Landon E. Overby* (nonattorney practitioner), *both of Providence, Rhode Island,* who were on the brief, for the appellant.

*Mark D. Gore*, Appellate Attorney, with whom *Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Richard A. Daley*, Deputy Chief Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before LANCE and GREENBERG, *Judges*, and HAGEL, *Senior Judge*.[1]

HAGEL, *Senior Judge*, filed the opinion of the Court.  GREENBERG, *Judge,* filed a concurring opinion.

HAGEL, *Senior Judge*:  Mary Vilfranc appeals through counsel a January 15, 2015, Board of Veterans' Appeals (Board) decision that denied entitlement to a disability rating in excess of 10% for temporomandibular joint dysfunction.[2]  Ms. Vilfranc's Notice of Appeal was timely, and the

---

[1] Judge Hagel is a Senior Judge acting in recall status.  *In re: Recall of Retired Judge*, U.S. Vet. App. Misc. Order 09-16 (Oct. 13, 2016); *In re: Recall of Retired Judge*, U.S. Vet. App. Misc. Order 15-16 (Dec. 21, 2016).

[2] The Board also remanded Ms. Vilfranc's claim of entitlement to an initial compensable rating for allergic rhinitis.  That claim is not before the Court at this time.  *See* 38 U.S.C. § 7266(a) (stating that the Court reviews only final decisions of the Board); *see also Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000) (Board remand does not constitute a final decision that may be appealed (citing 38 C.F.R. § 20.1100(b) (1999))).  The Board also referred Ms. Vilfranc's claim for benefits for dental treatment to a VA regional office for development.  Generally, the Court does not have jurisdiction over a referred claim.  *See Link v. West*, 12 Vet.App. 39, 47 (1998) ("Claims that have been referred by the Board to the [regional office] are not ripe for review by the Court."); *but see Young v. Shinseki*, 25 Vet.App. 201,

Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. § 7252(a). Although neither party sought a precedential decision, this matter was referred to a panel of the Court to determine the proper interpretation of 38 C.F.R. § 4.150, Diagnostic Code 9905, concerning the evaluation of temporomandibular joint dysfunction. Because we find the Secretary's regulation ambiguous and his interpretation is not plainly erroneous or inconsistent with the language of the regulation, we defer to that interpretation. Accordingly, the Court will affirm the January 2015 Board decision.

## I. FACTS

Ms. Vilfranc served on active duty in the U.S. Marine Corps from January 2002 to February 2010. Her service medical records reveal a history of jaw pain and locking since February 2009.

In February 2010, Ms. Vilfranc filed a claim for VA disability benefits for, among other conditions, bilateral temporomandibular joint dysfunction.

In January 2011, Ms. Vilfranc underwent a VA dental examination, performed by John French, D.D.S. Ms. Vilfranc reported that she experienced headaches due to pain in her jaw and that she accordingly limited what she chews to reduce the likelihood of a headache. Dr. French found objective evidence of bilateral pain. Ms. Vilfranc's maximum inter-incisal range–that is, how far she was able to open her jaw–was 40 millimeters. Dr. French diagnosed service-related temporomandibular joint dysfunction.

In May 2011, Ms. Vilfranc underwent another VA dental examination, again performed by Dr. French. She reported experiencing headaches two to three times per week, difficulty chewing, muscular fatigue while chewing, and radiating jaw pain. Her inter-incisal range was 40 to 50 millimeters and unaffected by repetitive testing. Dr. French concluded that Ms. Vilfranc's headaches were likely related to or caused by her temporomandibular joint dysfunction.

202 (2012) (en banc order) (holding that the Court has limited jurisdiction to review the propriety of referring rather than remanding a claim where the appeal is otherwise properly before the Court). Because Ms. Vilfranc raises no argument as to the propriety of the referral, the Court will not address that matter. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc) (holding that, where an appellant abandons an issue or claim, the Court will not address it).

In May 2011, the regional office granted Ms. Vilfranc's claim for benefits for temporomandibular joint dysfunction and assigned a noncompensable disability rating. Ms. Vilfranc filed a Notice of Disagreement with that decision.

In June 2012, the regional office found clear and unmistakable error in its May 2011 decision and assigned a 10% disability rating for temporomandibular joint dysfunction, effective the day after Ms. Vilfranc's discharge from service. Ms. Vilfranc subsequently perfected her appeal to the Board.

In January 2015, the Board issued the decision on appeal, finding that a disability rating in excess of 10% for temporomandibular joint dysfunction was not warranted because, "[c]ollectively, the pertinent evidence does not support a finding that [Ms. Vilfranc's] bilateral [temporomandibular joint] dysfunction has resulted in a disability picture which more nearly approximates the criteria for a 20[%] disability rating." Record (R.) at 11. This appeal followed.

## II. PARTIES' ARGUMENTS

In her opening brief, Ms. Vilfranc argued only that the Board provided inadequate reasons or bases for its determination that a disability rating in excess of 10% was not warranted for temporomandibular joint dysfunction. In particular, she asserted that the Board failed to consider whether, in light of medical evidence showing "bilateral involvement" and limitation of motion to 40 millimeters, she is entitled to separate 10% disability ratings under Diagnostic Code 9905 for each temporomandibular joint. Appellant's Brief (Br.) at 6. She contended that, because Diagnostic Code 9905 contains no indication that only one disability rating will be assigned, 38 C.F.R. § 4.25 operates to require VA to afford her *separate* ratings for disability of each temporomandibular joint. *Id.* at 6-7.

In his brief, the Secretary argued that Ms. Vilfranc is not entitled to separate disability ratings for each temporomandibular joint under § 4.25 because, although that regulation requires that each disability be rated separately, Ms. Vilfranc has not demonstrated that more than one distinct disability exists. Secretary's Br. at 5. The Secretary further argued that Diagnostic Code 9905 supports the assignment of only one disability rating for limitation of motion of the temporomandibular joints because those joints, although paired, operate as a single unit and cannot

3

operate independently, such that one side might have more or less range of motion than the other. *Id.* at 6-8.

In reply, Ms. Vilfranc argued for the first time that she is entitled to separate disability ratings for each temporomandibular joint because there is evidence of painful motion in each joint, which she contends is evidence of separate disabilities. Reply Br. at 2-3. She reiterated that Diagnostic Code 9905 contains no exception to the rule of § 4.25 that separate disabilities must be rated separately. *Id.* at 3.

At oral argument, Ms. Vilfranc shifted the focus of her argument from the limitation of motion measurement of Diagnostic Code 9905 to 38 C.F.R. § 4.59, which she contends operates as a "bridge" to require VA to award her separate disability ratings under Diagnostic Code 9905 for each painful temporomandibular joint. She appeared to concede that she is not entitled to more than one disability rating for limitation of motion of the temporomandibular joints under Diagnostic Code 9905. She argued that Diagnostic Code 9905 was unambiguous and permitted the assignment of separate disability ratings because it did not expressly state otherwise.

For his part, the Secretary at oral argument argued that Diagnostic Code 9905 is clear on its face that separate ratings cannot be awarded for limitation of motion of each temporomandibular joint. He reiterated that the temporomandibular joints operate as a single unit.

### III. ANALYSIS

To best understand the subject matter of this appeal, we think it helpful to understand, in non-technical terms, the location and function of the temporomandibular joints. Temporomandibular is the combination of the names of three bones of the face–the mandible and the two temporal bones. The mandible is the horsehoe-shaped bone that forms the lower portion of the jaw. *See* HENRY GRAY, ANATOMY OF THE HUMAN BODY 5b. 8. (1918)[3] [hereinafter GRAY'S ANATOMY], available at www.bartleby.com/107/44.html. The mandible is connected to the two temporal bones, which

---

[3] Although this treatise is not of record, the Court here takes judicial notice of the anatomy of the jaw. *See Monzingo v. Shinseki*, 26 Vet.App. 97, 103 (2012) ("The Court may take judicial notice of facts of universal notoriety that are not subject to reasonable dispute."); *Smith v. Derwinski*, 1 Vet.App. 235, 238 (1991) ("Courts may take judicial notice of facts not subject to reasonable dispute." (citing FED. R. EVID. 201(b))); *Brannon v. Derwinski*, 1 Vet.App 314, 316-17 (1991).

4

sit at the sides and base of the skull, by the temporomandibular joints. *See id.* at 5a. 4. The mandible and the temporal bones act in concert, aided by the temporomandibular joint on each side, to open and close the jaw and to move the jaw from side to side. *See id.* at 5b. 8 ("The mandible articulates with the *two* temporal bones.").

## A. 38 C.F.R. § 4.59[4]

Ms. Vilfranc only obliquely cited § 4.59 in her reply brief, but spent the bulk of her time at oral argument asserting that her entitlement to a separate disability rating for each temporomandibular joint arises under that regulation. This argument is not persuasive.

The relevant portion of § 4.59 provides: "The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint."[5] 38 C.F.R. § 4.59 (2016). Ms. Vilfranc contends that, because there is evidence of pain in each temporomandibular joint, § 4.59 operates to require VA to assign the minimum compensable disability rating under the diagnostic code for each joint. Ms. Vilfranc, however, fails to appreciate that she is already in receipt of benefits for *actual*

---

[4] On December 20, 2016, in accordance with Rule 30(b) of the Court's Rules of Practice and Procedure, Ms. Vilfranc filed a notice of citation of supplemental authority. Specifically, she cites the Court's recent precedential opinion in *Southall-Norman v. McDonald*, ___ Vet.App. ___, No. 15-1357, 2016 WL 7240720 (Vet. App. Dec. 15, 2016). Ms. Vilfranc contends that *Southall-Norman*

> clarified that [§] 4.59 "condition[s] the award of a minimum compensable evaluation for a musculoskeletal disability . . . on evidence of an actually painful . . . joint or periarticular region and the presence of a compensable evaluation in the applicable [diagnostic code]." Slip. Op. at 7. The Court recognized that this is so irrespective of whether pain in a joint or periarticular region causes functional loss." Slip op. at 8 (footnote 5).

Notice of Citation to Supplemental Authority at 1. Although Ms. Vilfranc accurately quotes the Court in her notice, as the panel in *Southall-Norman* explained, the issue for resolution in that case was "whether the Board is required to consider and apply . . . § 4.59 when evaluating a musculoskeletal disability under a diagnostic code (DC) that is *not* predicated on range of motion measurements." *Southall-Norman*, ___ Vet.App. at __, 2016 WL 7240720 at *1 (emphasis added). Diagnostic Code 9905, at issue in this case, is, in fact, predicated on range of motion measurements. Accordingly, we find that *Southall-Norman* is not relevant to this appeal.

[5] Although § 4.59 states that the minimum compensable rating will be afforded to actually painful joints "due to healed injury," and although there is no evidence in the record that Ms. Vilfranc's temporomandibular joint dysfunction is the result of an injury, the Secretary conceded in an earlier case and at oral argument in this case that "this sentence of the regulation applies to painful motion that is caused by either a healed injury or a disease." *Petitti v. McDonald*, 27 Vet.App. 415, 425 n.5 (2016).

*limitation of motion* of the temporomandibular joints under Diagnostic Code 9905. Accordingly, she is not in need of the assignment of the minimum compensable disability rating for actually painful joints.

In *Petitti*, the Court explained: "[Section] 4.59 serves as a bridge linking painful motion and limitation of motion, with the result that a claimant who has painful motion is considered to have limited motion under [the relevant diagnostic code] *even though actual motion is not limited*." 27 Vet.App. at 425 (citing *Lichtenfels v. Derwinski*, 1 Vet.App. 484, 488 (1991)) (emphasis added). In other words, § 4.59 is meant to compensate a claimant whose pain does not cause enough limitation of motion in a joint to reach a compensable level; it is not for application where, as here, the claimant *already has* a compensable level of limitation of motion. Accordingly, the Court need not consider the question of whether a claimant could be entitled to separate minimum compensable disability ratings under Diagnostic Code 9905 by way of § 4.59 as a result of painful motion in each temporomandibular joint.

## B. Diagnostic Code 9905

The remaining question, then, is whether Ms. Vilfranc is entitled to separate disability ratings under Diagnostic Code 9905, which rates temporomandibular joint dysfunction based on limitation of motion. The Secretary interprets his regulation as permitting the assignment of only a single disability rating based on limitation of motion of the temporomandibular joints as a unit. We are, therefore, asked to evaluate whether that interpretation is reasonable.

The "interpretation of a . . . regulation is a question of law" that the Court reviews de novo. *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003). As always, to discern the meaning of a regulation, we begin with the plain language of the regulation. *Cf. Perrin v. United States*, 444 U.S. 37, 42 (1979) ("We begin with the language of the . . . Act itself."); *Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) (noting that the canons of statutory interpretation apply to interpreting regulations), *superseded by statute as stated in Samish Indian Nation v. United States*, 419 F.3d 1355 (Fed. Cir. 2005). "[I]f the meaning of the regulation is clear from its language, then that is 'the end of the matter.'" *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)).

Diagnostic Code 9905 provides, in relevant part:

Temporomandibular articulation, limited motion of:

Inter-incisal range:

0 to 10 mm . . . . . . . . . 40%

11 to 20 mm . . . . . . . . . . 30%

21 to 30 mm . . . . . . . . . . 20%

31 to 40 mm . . . . . . . . . . 10%

38 C.F.R. § 4.150, Diagnostic Code 9905 (2016).[6]

Although both parties argue that the language of the regulation is plain, they reach different conclusions about that purportedly plain meaning. That fact alone is some evidence of ambiguity, but we need not rest on that. We are guided by a substantially similar case from the United States Court of Appeals for the Federal Circuit (Federal Circuit): *Smith v. Nicholson*, 451 F.3d 1344 (Fed. Cir. 2006).

At issue in *Smith* was 38 C.F.R. § 4.87, Diagnostic Code 6260, the Secretary's diagnostic code governing tinnitus, a condition in which a person perceives sound–usually ringing–in his or her ear or ears that is not actually there. Mr. Smith reported tinnitus in both ears, but VA assigned only a single 10% disability rating for his condition. At the time Mr. Smith filed his claim for benefits for tinnitus, Diagnostic Code 6260 provided only, "Tinnitus, recurrent . . . . . . . . 10[%]." 38 C.F.R. § 4.87, Diagnostic Code 6260 (2000).[7]

Like Ms. Vilfranc, before this Court, Mr. Smith argued that § 4.25 required VA to assign separate disability ratings for tinnitus in each ear because Diagnostic Code 6260 itself did not specify that only a single disability rating was permitted. *See Smith v. Nicholson*, 19 Vet.App. 63, 68-69 (2005), *rev'd by Smith*, 451 F.3d at 1344. The Secretary, as he does here, argued that his regulation was unambiguous and that, where he intended to permit separate disability ratings, he expressly

_____

[6] The diagnostic code also provides for a 10% disability rating based on limitation of lateral excursion between 0 and 4 millimeters. Ms. Vilfranc's disability rating, however, is based on her inter-incisal range.

[7] In 2003, VA amended Diagnostic Code 6260 to include Note 2, which reads, "Assign only a single evaluation for recurrent tinnitus, whether the sound is perceived in one ear, both ears, or in the head." 38 C.F.R. § 4.87, Diagnostic Code 6260 (2016).

stated so in the rating schedule. *See id.* at 69. This Court found Diagnostic Code 6260 plain on its face and, further, that the Secretary's interpretation conflicted with the plain meaning. *Id.* at 74-75. The Court found that "the rating schedule contains no exception to § 4.25(b) regarding tinnitus; that is, nothing in the rating schedule limits a veteran with tinnitus in both ears to only one rating." *Id.* at 75. Having found the regulation plain, the Court declined to defer to the Secretary's interpretation of Diagnostic Code 6260.

On appeal, the Federal Circuit reversed, finding that the regulation was, in fact, ambiguous. *Smith*, 451 F.3d at 1349. Specifically, the Federal Circuit stated:

> First, we consider whether the language of the regulations § 4.25(b) and [Diagnostic Code] 6260 leaves "in doubt" whether tinnitus in each ear constitutes separate disabilities. We conclude that it does. Section 4.25(b) provides that[,] "[e]xcept as otherwise provided in this schedule, the disabilities arising from a single disease entity . . . are to be rated separately as are all other disabling conditions, if any." 38 C.F.R. § 4.25(b) [(2005)]. Thus, § 4.25(b) is a general rule requiring separate disability ratings for each disability arising from a single disease. The question here is whether tinnitus in both ears constitutes separate disabilities. The Veterans Court observed that[,] under [Diagnostic Code] 6260, tinnitus is listed as a disease of the ear, implicating § 4.25(b), which also uses the term "disease." But, while tinnitus is listed under the heading "diseases of the ear," [Diagnostic Code] 6260 does not address whether tinnitus, as perceived in one ear, two ears, or otherwise, is a single disability. The plain language of regulations § 4.25(b) and [Diagnostic Code] 6260 clearly does not resolve that question.

*Id.* at 1350.

Following the Federal Circuit's lead in *Smith*, we, too, find that the regulation at issue here is ambiguous. Diagnostic Code 9905 does not answer the question posed by Ms. Vilfranc, which is whether dysfunction in both temporomandibular joints constitutes separate disabilities, such that separate disability ratings must be assigned.

Because it concluded that Diagnostic Code 6260 was ambiguous, the Federal Circuit determined that the Secretary's interpretation of the regulation as permitting only a single disability rating for tinnitus was entitled to deference, as that interpretation was not plainly incorrect or inconsistent with the regulation. *Smith*, 451 F.3d at 1350; *see Auer v. Robbins*, 519 U.S. 452, 461-62 (1997) (holding that an agency's interpretation of an ambiguous regulation is entitled to substantial deference); *Mulder v. Gibson*, 27 Vet.App. 10, 16 (2014) ("[C]ourts should defer to an agency's

8

interpretation of its own ambiguous regulation so long as that interpretation is not inconsistent with the language of the regulation or otherwise plainly erroneous and represents the agency's considered view on the matter." (citing *Smith*, 451 F.3d at 1349)).  The Federal Circuit explained:

> The []VA argues that its interpretation that tinnitus constitutes both a disease and a disability is founded upon its analysis of medical principles.  Although we do not evaluate those principles, there is a lack of evidence in the record that the []VA's interpretation is plainly erroneous.  The []VA's interpretation is also not inconsistent with the regulations, as the regulations do not address whether tinnitus is one disability.

*Smith*, 451 F.3d at 1351.

Here, the Secretary also argues that his interpretation is based on medical principles, namely the anatomy of the temporomandibular joints, which he explains are connected to each other by the solid mandible and are unable to operate independently.  The Court notes that the Secretary cited no medical evidence for his explanation in his brief or at oral argument and so, in this way, this case differs from *Smith*.  Nevertheless, the Court finds, as the Federal Circuit did in *Smith*, that there is no evidence that the Secretary's explanation, which underlies his interpretation of Diagnostic Code 9905, is plainly erroneous.  *See id.*

First, Ms. Vilfranc did not, at any stage of these proceedings, challenge the Secretary's description of the temporomandibular joints as operating as a single unit.  Second, the Secretary stated at oral argument that the inter-incisal range is measured once, in the center of the mouth.  The VA medical examinations of record each contain a single inter-incisal measurement, lending support to the Secretary's statement.  *See* R. at 797, 859.  Finally, the Court is mindful of the Federal Circuit's determination that some conditions are capable of lay observation.  *See Jandreau v. Nicholson*, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007); *see also McLendon v. Nicholson*, 20 Vet.App. 79, 83 (2006).  We think it plain that, to paraphrase the old song, the temporal bone is connected to the mandible, which is connected on the opposite side to the other temporal bone.  *See* GRAY'S ANATOMY at 5a. 4, 5b. 8; *see also* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1880 (32d ed. 2012) (defining temporomandibular as "pertaining to the temporal bone and mandible,"); *id.* (defining temporal as "pertaining to the lateral region of the head"); *id.* at 1101 (defining mandible as "the horseshoe-shaped bone forming the lower jaw").

The Court acknowledges that, in *Smith*, there was some evidence that the Secretary's interpretation of Diagnostic Code 6260 as permitting only a single disability rating for tinnitus was "reflected in various public documents," while the Secretary offers no such evidence for his interpretation of Diagnostic Code 9905. *Smith*, 451 F.3d at 1351. The absence of such evidence, however, is not fatal to our determination that deference is due to the Secretary's interpretation. As the Federal Circuit explained,

> even if the []VA's interpretation were not reflected in published documents and was only reflected in litigating documents, that would still not be a basis for declining to defer to the agency's interpretation of its own regulation. In *Auer*, the Supreme Court afforded deference to an agency's interpretation of its regulations even when that interpretation was first expressed in an amicus brief to the Court. 519 U.S. at 461. Contrary to *Chevron*[*, U.S.A., Inc. v. Nat. Res. Def. Counsel, Inc.*, 467 U.S. 837 (1984),] deference, which applies to an agency's interpretation of a statute and generally requires relatively formal administrative procedures such as notice and comment rulemaking or formal adjudication, an agency's interpretation of its regulations does not require observance of those formalities in order to be afforded deference.

*Id.* In line with the Federal Circuit's holding in *Smith*, we likewise conclude that the fact that the Secretary's public statement of his interpretation of Diagnostic Code 9905 was made for the first time in his brief before the Court does not mean that his interpretation is not entitled to deference. *See Johnson v. Shinseki*, 26 Vet.App. 237, 248 (2013) (Moorman, J., concurring) ("[W]e are bound by the high degree of deference that the . . . Federal Circuit traditionally has shown for the Secretary's interpretation of his own regulatory words, even when the interpretation has first been advanced during litigation." (citing *Reizenstein v. Shinseki*, 583 F.3d 1331, 1335 (Fed. Cir. 2009)).

### IV. CONCLUSION

In light of the above discussion, we conclude that a claimant is entitled to only a single disability rating for limitation of inter-incisal motion under 38 C.F.R. § 4.150, Diagnostic Code 9905. Accordingly, the January 15, 2015, Board decision is affirmed.

GREENBERG, *Judge*, concurring: I am writing separately and respectfully because I believe a panel opinion was unnecessary. This case should have been disposed of by a single Judge.

Congress has provided that this Court "may hear cases by judges sitting alone or in panels, as determined pursuant to procedures established by the Court." 38 U.S.C. § 7254(b). The statutory command of Congress that a single Judge may issue a binding decision, pursuant to procedures established by the Court, is "unambiguous, unequivocal, and unlimited." *Conroy v. Aniskoff,* 507 U.S. 511, 514 (1993). There is no statutory language to suggest that a panel of three has more persuasive value than a single Judge. *See* 38 U.S.C. § 7254.

In *Frankel v. Derwinski*, this Court held that the question of whether a matter requires panel consideration "is a *function of its precedential value*." 1 Vet.App. 23, 25 (1990). A matter should be disposed of by a single judge if the "case on appeal is of *relative simplicity and 1. does not establish a new rule of law; 2. does not alter, modify, criticize, or clarify an existing rule of law; 3. does not apply an established rule of law to a novel fact situation; 4. does not constitute the only recent, binding precedent on a particular point of law within the power of the Court to decide; 5. does not involve a legal issue of continuing public interest; and 6. the outcome is not reasonably debatable*." *Id.* at 25-26 (emphasis added).

The criteria set forth in *Frankel* are not found in this Court's enabling statute. However, they have been adopted by the Court's own internal operating procedures. *See* IOP I(b)(2) & II(b)(2).

It is unclear how the holding in this case involved *any* of the concepts set forth above. This matter was fully briefed by both parties and the record of proceedings was submitted by the Secretary on April 25, 2016. On July 27, 2016, the matter was submitted to this panel. On December 6, 2016, we heard oral argument. It is reasonable to expect that a single Judge would have disposed of this matter of *relative simplicity* more quickly. A timely appeal to the Federal Circuit is the preferred course of review of a single Judge disposition which I believe Congress envisioned. *See* 38 U.S.C. § 7292.