Citation Nr: 1719265 
Decision Date: 05/18/17 Archive Date: 06/06/17

DOCKET NO. 12-00 098 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Albuquerque, New Mexico


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for chronic left ankle strain.

2. Entitlement to an initial rating in excess of 10 percent for chronic right ankle strain.

3. Entitlement to an initial rating in excess of 10 percent for eczema.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

Donna D. Ebaugh, Counsel


INTRODUCTION

The Veteran served on active duty from October 1988 to October 2008.

This matter is before the Board of Veterans' Appeals (Board) on appeal of a rating decision in July 2009 of the Department of Veterans Affairs (VA) Regional Office (RO) in Albuquerque, New Mexico, which granted service connection for the disabilities on appeal and assigned each of them a noncompensable disability rating.

In July 2012, the Veteran appeared at a hearing before the undersigned at the RO. A transcript of that hearing is in the claims file.

In June 2014, the Board remanded the claims for further development. While on remand, the Agency of Original Jurisdiction (AOJ) increased each of the initial disability ratings to 10 percent beginning the date of service connection. 

The issue of entitlement to a higher initial rating for eczema is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. For the entire period on appeal, the Veteran's left ankle condition manifested by no more than moderate limitation of motion and did not manifest as ankylosis, malunion, or deformity; astragalectomy of his left ankle is not shown.

2. For the entire period on appeal, the Veteran's right ankle condition manifested by no more than moderate limitation of motion and did not manifest as ankylosis, malunion, or deformity; astragalectomy of his left ankle has not been shown.


CONCLUSIONS OF LAW

2. The criteria for an initial disability rating greater than 10 percent have not been met for the Veteran's left ankle condition. 38 U.S.C.A. § 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.3, 4.7, 4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5271 (2016).

 3. The criteria for an initial disability rating greater than 10 percent have not been met for the Veteran's right ankle condition. 38 U.S.C.A. § 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.3, 4.7, 4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5271 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

VA has a duty to provide notification to the Veteran with respect to establishing entitlement to benefits, and a duty to assist with development of evidence under 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159(b)(2016).

VA's duty to notify was satisfied by letter dated in January 2009. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). Moreover, this appeal arises from the Veteran's disagreement with the initial ratings assigned following the grant of service connection. As such, the claims have been substantiated and VA has no further obligation to provide notice under 38 U.S.C.A. § 5103 on this downstream element of the claim. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007).

Additionally, VA has a duty to assist the Veteran in obtaining evidence to substantiate his claims. This includes assisting in the procurement of service treatment records and pertinent medical records, and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

In this case, all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. The AOJ obtained VA outpatient treatment records, service treatment records, and VA medical opinions and examinations pertinent to the issues on appeal. Further, following the Veteran's hearing testimony in which he indicated that he had also been treated privately for his ankle disabilities, the Board remanded the claims so that the Veteran may have the opportunity to submit the private records, or submit an authorization and consent form so that such records could be obtained on his behalf. The AOJ informed the Veteran of the opportunity to provide the necessary information, in an August 2014 letter but the Veteran did not respond to the invitation. Additionally, in February 2015, the Veteran responded to the supplemental statement of the case indicating that he waived the 30 day waiting period and wanted his case submitted to the Board without further delay. There is no indication that there are any relevant, outstanding records. 

The Veteran was also provided with VA examinations in January 2009 and August 2014. The January 2009 VA examination report is inadequate as it did not address all of the rating criteria for ankle disabilities. A VA addendum opinion was obtained in July 2009 but that did not correct the January 2009 inadequacy. However, the August 2014 VA examination is adequate and corrected the prior inadequacy. The examination is adequate for VA purposes.

In Correia v. McDonald, 28 Vet. App. 158 (2016); that joints rated on the basis of limitation of motion should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint. 28 Vet. App. 158 (2016). The Board acknowledges that the August 2014 VA examination reports does not specifically address range of motion findings on weight bearing and non weight bearing, or in passive and active motion. However, the Board finds that another remand for strict compliance with Correia in this particular case would result in further and unnecessary delay. In this regard, the Board notes that the United States Court of Appeals for Veteran's Claims has more recently held that 38 C.F.R. § 4.59 is not applicable where a Veteran is already in receipt of at least the minimum compensable rating. In Vilfranc, the Court explained that "§ 4.59 is meant to compensate a claimant whose pain does not cause enough limitation of motion in a joint to reach a compensable level; it is not for application where, as here, the claimant already has a compensable level of limitation of motion." Vilfranc v. McDonald, 28 Vet. App. 357, 361 (2017) (emphasis in the original). 

Further, the August 2014 examination was undertaken in accordance with the June 2014 remand. Additionally, the Board directed the AOJ obtain any outstanding VA treatment records and send the Veteran the aforementioned letter regarding private treatment records. The outstanding VA treatment records were obtained and associated with the file and the August 2014 letter invited the Veteran to provide the additional private records or permit VA to obtain them on his behalf. Thus, VA has complied with the June 2014 remand instructions. See Stegall v. West, 11 Vet. App. 268 (1998).

As noted above, the Veteran was afforded a hearing before the undersigned. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) requires that the VLJ who chairs a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. In March 2016, the United States Court of Appeals for the Federal Circuit (Federal Circuit) ruled in Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016) that a Bryant hearing deficiency was subject to the doctrine of issue exhaustion as laid out in Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). Because the Veteran has not raised a potential Bryant problem in this appeal, no further discussion of Bryant is necessary.

Thus VA's duty to assist in the development of these claims is complete. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

II. Initial Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7. All benefit of the doubt will be resolved in the Veteran's favor. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3.

A veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where the appeal arises from the original assignment of a disability evaluation following an award of service connection, the severity of the disability at issue is to be considered during the entire period from the initial assignment of the disability rating to the present time. See Fenderson v. West, 12 Vet. App. 119 (1999). As in the instant case, separate ratings can be assigned for separate periods of time based on the facts found, a practice known as "staged" ratings. Id. at 126. 

When an evaluation of a disability is based upon limitation of motion, the Board must also consider, in conjunction with the otherwise applicable diagnostic code, any additional functional loss the Veteran may have sustained by virtue of other factors as described in 38 C.F.R. §§ 4.40 and 4.45. DeLuca v. Brown, 8 Vet. App. 202, 206 (1995). Such factors include more or less movement than normal, weakened movement, excess fatigability, incoordination, pain on movement, swelling, and deformity or atrophy from disuse. A finding of functional loss due to pain must be supported by adequate pathology and evidenced by the visible behavior of the Veteran. 38 C.F.R. § 4.40 (2016); Johnston v. Brown, 10 Vet. App. 80, 85 (1997).

Additionally, the Court of Appeals for Veterans Claims has held that "pain itself does not rise to the level of functional loss as contemplated by VA regulations applicable to the musculoskeletal system." See Mitchell v. Shinseki, 25 Vet. App. 32, 38 (2011). Rather, pain may result in functional loss, but only if it limits the ability to "perform the normal working movements of the body with normal excursion, strength, speed, coordination[, or] endurance." Id. (quoting 38 C.F.R. § 4.40).

The Board has considered the entire record. The Federal Circuit has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378 (Fed. Cir. 2000). Therefore, the Board will discuss the evidence pertinent to the rating criteria and the current disability.

The Veteran's left and right ankle conditions are currently rated under Diagnostic Code 5271. Under Diagnostic Code 5271, a rating of 10 percent is warranted when limitation of motion of the ankle is moderate. See 38 C.F.R. § 4.71a, Diagnostic Code 5271. The maximum rating of 20 percent disabling is available under Diagnostic Code 5271 where the limitation of motion in the ankle is marked. Id. 

Normal ankle motion is dorsiflexion to 20 degrees, and plantar flexion to 45 degrees. 38 C.F.R. § 4.71a, Plate II.

The Veteran was afforded a VA general medical examination in January 2009, which included discussion of the claimed bilateral ankle disability. Range of motion testing was found to be normal. The Veteran was diagnosed with chronic ankle strain, bilateral. A July 2009 VA addendum opinion indicates that there was no change in range of motion or increase in pain with repetitive testing. 

In the Veteran's July 2010 notice of disagreement, he reported that he experienced great pain in both ankles and was limited in how far he could walk. He also reported that he could no longer run and therefore, had issues with maintaining a healthy weight. He reported that when he was on his feet for an extended period of time or even shopping for groceries, he had pain in his feet and swelling. He took over the counter medication to treat the pain. 

During his hearing before the Board, the Veteran described functional impact of the ankle disability as follows: it took him several seconds to get up with prolonged sitting. He worked in a factory where he had to stand for long periods. He regularly took pain medicine, such as ibuprofen, to get through the day. He also experienced swelling in the ankles and took ibuprofen to keep the swelling down. He reported that he used over-the-counter braces such as Ace bandages, for support. He reported that he used to play sports such as softball, bike ride, and that he is not able to do those things anymore because of ankle pain. He reported that when driving, his ankles stiffened and he had to get out and stretch. He also reported taking time off work to rest his ankles.

On an annual evaluation at the VA medical center in August 2013, the Veteran reported knee, but not ankle pain. No other complaints referable to the ankles were documented.

During the August 2014 VA examination, the Veteran reported constant, daily pain in each ankle ranging from 5 to 9 out of 10. He also reported that flare-ups severely limited additional activity. 

Range of motion testing revealed plantar flexion to 30 degrees, before pain, on the right, and 15 degrees before pain, on the left. He had dorsiflexion to 15 degrees before pain, on both sides. Even with pain, he had plantar flexion to 40 degrees on each side and dorsiflexion to 20 degrees with pain on each side. On repetitive testing, the Veteran had plantar flexion to 40 degrees and dorsiflexion to 20 degrees, on both sides. The August 2014 VA examiner noted that the Veteran had no additional limitation of motion following repetitive use testing but did have loss of function, including less movement than normal, pain on movement, and disturbance of locomotion, all on both sides. The examiner was unable to offer an opinion with respect to additional loss of motion during flare-ups without speculation. The examiner wrote that in order to offer such an opinion, the examiner would need to observe the Veteran in states of flare-up and non flare-up. 

The August 2014 VA examiner also noted that the Veteran had localized tenderness or pain on palpation of each ankle joint. Muscle strength testing was normal on both ankles. Joint stability testing revealed no laxity on either side. The examiner noted that there was no ankylosis of ankle or subtalar and/or tarsal joint on either side. The Veteran denied any shin splints, stress fractures, Achilles tendonitis, Achilles tendon rupture, malunion of calcaneus (os calcis) or talus (astragalus), or talectomy (astragalectomy). The examiner noted that the Veteran occasionally used a brace for assistance with locomotion. 

The August 2014 VA examiner also noted that August 2014 X-rays revealed mild irregularity of the distal left fibula with thinning of the medial cortex that was found to be unchanged from 2009. 

The August 2014 VA examiner also noted the Veteran's report that he worked in a job where he stood on his feet and that he left work early about once per month due to his ankles. The examiner found that the ankle disability ranged from no affect at all on work to mild impairment of sedentary work and severe impairment of physical work.

VA treatment records confirm regular prescriptions for 800MG of ibuprofen to treat unspecified pain as needed. See e.g. July 2014 VA treatment record. 

The Veteran underwent another annual review at the VA medical center in September 2014. He reported knee pain, but there was no record of ankle symptoms. Examination of the lower extremities revealed no pain. Strength was equal in all four extremities, sensation was intact, and reflexes and gait were normal.

The Veteran has been assigned a 10 percent rating for each ankle due to moderate limitation of motion. See 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5271 (2016); see also 38 C.F.R. §§ 4.40, 4.45 (2016). 

A rating higher than 10 percent is not warranted as the evidence does not indicate that the Veteran suffered from marked limitation of motion in either ankle. As noted, the maximum rating of 20 percent is available under Diagnostic Code 5271 where the limitation of motion in the ankle is marked. 38 C.F.R. § 4.71a, Diagnostic Code 5271.

The Board acknowledges that the Veteran's range of motion was limited during the VA examinations; however, the loss of only 5 degrees on each side in plantar flexion, and normal dorsiflexion on both sides--does not constitute loss of motion that more nearly approximates marked limitation of motion. 

In regard to flare-ups, the Veteran has asserted that he experiences pain and swelling, can no longer play the sports he used to, or run; and has to stop and stretch his ankles when driving for long periods, leaves work early occasionally or takes sick time to rest his ankles. The most recent examination report characterized his descriptions as severe further limitation during flare-ups. These are competent reports; but the Veteran did not provide similar reports when seen outside the examination setting and an attempt was being made to document all of his disabilities. The Board finds his reports while receiving medical care and evaluations to be more probative than his reports when being examined for compensation purposes.

The weight of the evidence is against the assignment of a disability rating in excess of 10 percent in each ankle. The Board accepts that the Veteran has flare-ups that include significant pain. See DeLuca, supra. However, neither the lay nor medical evidence reflects the functional equivalent of symptoms required for a higher evaluation. In order to warrant a higher evaluation, there must be the functional equivalent of marked limitation of motion of either ankle. Although the Board is sympathetic to the Veteran's report of bilateral ankle flare-ups that include pain, pain alone does not constitute functional loss under VA regulations. See Mitchell, supra. 

The Board has considered whether a higher or separate disability rating is available under any other potentially applicable provision of the rating schedule. However, neither a higher nor separate evaluation is warranted based on any other provision of the rating schedule as there is no ankylosis or malunion of the os calcis or astragalus. See 38 C.F.R. § 4.71a, Diagnostic Codes 5270, 5273.

For these reasons, the Board is constrained to find that the preponderance of the evidence is against initial ratings in excess of 10 percent for each ankle.


ORDER

An initial rating in excess of 10 percent for chronic left ankle strain is denied.

An initial rating in excess of 10 percent for chronic right ankle strain is denied.


REMAND

The June 2014 remand specifically directed that the Veteran be afforded a VA dermatological examination between November and January, so that he could be evaluated during an active phase of eczema. The Veteran was instead afforded a VA examination in August, when he was not experiencing an active phase. Thus, another examination is required. See Stegall v. West, 11 Vet. App. 268 (1998) (remand by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms).

Further, as the record indicates that the Veteran is treated for his eczema through VA, any outstanding VA treatment records should also be obtained. 

Accordingly, the case is REMANDED for the following action:

1. Obtain any outstanding VA treatment records. 

2. Afford the Veteran a VA skin examination between November and January.

The electronic claims file must be made available to the examiner for review.

3. If any aspect of the decision remains adverse to the Veteran, issue a supplemental statement of the case and return the case to the Board, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
Mark D. Hindin
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs