Citation Nr: AXXXXXXXX
Decision Date: 09/30/21 Archive Date: 09/30/21

DOCKET NO. 190529-20541
DATE: September 30, 2021

ORDER

Service connection for ischemic heart disease, to include as due to herbicide (Agent Orange) exposure, is granted. 

FINDINGS OF FACT

1. It is established on a factual basis that the Veteran had exposure to Agent Orange or other herbicide agents at Korat Royal Thai Air Force Base (AFB) in Thailand from July 12, 1969 to May 1, 1970. His herbicide exposure is the result of his in-service work duties as a vehicle driver and as a member of the security platoon, placing him in close proximity to the perimeter of the Korat AFB on a regular basis. 

2. The Veteran has ischemic heart disease, manifest to a degree of 10 percent post-service, which is the result of his factually established in-service exposure to Agent Orange or other herbicide agents at Korat AFB in Thailand in 1969 and 1970. 

CONCLUSION OF LAW

The criteria have been met for service connection for ischemic heart disease due to herbicide (Agent Orange) exposure. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1116, 1116A, 1154(a), 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.313 (2020). 

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the U.S. Army from February 1969 to March 1976. Subsequently, the Veteran also served in the California Army National Guard from 1983 to 1991.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law created a new framework for claimants dissatisfied with VA's decision on their claim to seek review under a modernized review system. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a May 2018 rating decision issued by an Agency of Original Jurisdiction (AOJ) of the Department of Veterans Affairs (VA).

In response to the May 2018 rating decision, the Veteran filed a May 2019 Decision Review Request: Board Appeal (Notice of Disagreement / NOD) (VA Form 10182). In this May 2019 NOD, the Veteran selected the Hearing Lane. See 38 C.F.R. §§ 20.300, 20.302 (2020). In light of the Veteran's choice of the Hearing Lane, the Board may only consider the evidence of record at the time of the AOJ's May 23, 2018 rating decision; evidence submitted by the Veteran or his representative at the hearing (to include the March 2021 hearing testimony itself); and finally, any evidence submitted by the Veteran or his representative within 90 days following the hearing. 38 C.F.R. § 20.302(a). 

As alluded to above, in March 2021, the Veteran testified at a Board virtual tele-hearing before a Veterans Law Judge (VLJ). The transcript of this hearing is associated with the claims file. 

A review of the claims file reveals that neither the Veteran nor his representative submitted any additional clinical evidence at the March 2021 hearing or within 90 days after this hearing (i.e., during an evidentiary window). 

However, in May 2019 and August 2021, additional evidence was added to the claims file outside of the evidentiary window, during a period of time when new evidence was not allowed specifically, duplicate service personnel records (SPRs), a duplicate VA treatment record, and various documentation (some duplicates, some new) related to the Veteran's alleged herbicide exposure at Korat AFB in Thailand. Therefore, the Board may not consider this additional evidence, as it was not in the claims file at the time of the AOJ's May 23, 2018 rating decision or during an applicable evidentiary window. See 38 C.F.R. §§ 3.103(c)(2); 20.300, 20.302, 20.801(a). In fact, at the March 2020 hearing, the Veteran was advised by the VLJ to resubmit any evidence within 90 days of the hearing in order for it to be considered by the Board. But ultimately, the Veteran did not resubmit this evidence. Regardless, in the future, the Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

Service Connection 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the disease or injury incurred or aggravated during service the "nexus" requirement. Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

VA is to give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability benefits. 38 U.S.C. § 1154(a). There is no categorical rule that medical evidence is required when the determinative issue is either medical etiology or a medical nexus. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). 

The Board should make explicit findings regarding the competency and, if necessary, the credibility of the lay evidence of record. Miller v Wilkie, 32 Vet. App. 249, 257-262 (2020). Lay testimony is competent to describe the presence of readily observable features or symptoms of injury or illness that are not medical in nature, such as varicose veins, tinnitus, and flat feet. See 38 C.F.R. § 3.159(a)(2); Barr v. Nicholson, 21 Vet. App. 303, 307-310 (2007). The Federal Circuit has also clarified that lay evidence can be competent for the medical diagnosis or etiology of a condition if: (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). And if the disability is of the type for which lay evidence is competent, the Board must weigh the probative value of that lay evidence against other evidence of record in making its determination regarding the award of service connection. Buchanan v. Nicholson, 451 F.3d 1331, 1334-37 (Fed. Cir. 2006).

In determining whether service connection is warranted, the Board shall consider the benefit-of-the-doubt doctrine. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1991). That is, the claimant is entitled to the benefit of the doubt when the evidence is in "approximate" balancei.e., "nearly equal"but does not require that the evidence be in exact equipoise. Lynch v. McDonough, __ F.3d __, No. 2020-2067 (Fed. Cir. June 3, 2021). 

Ischemic Heart Disease

The Veteran contends that he has current ischemic disease that is the result of his exposure to herbicide agents while he was stationed at Korat AFB in Thailand during active service with the U.S. Army in 1969 and 1970. Specifically, he asserts that his military occupational specialty (MOS) work duties as a vehicle driver and as a member of the security platoon placed him in close proximity to the perimeter of the Korat AFB in 1969 and 1970. He maintains that while working as a vehicle driver on a daily basis for seven to eight months, he drove various heavy duty trucks and bulldozers in order to build a road around the perimeter of Korat AFB. This perimeter had been previously defoliated with commercial and / or tactical herbicides. In the process of constantly removing and digging the topsoil and vegetation within 100 yards outside the perimeter of the base, he inhaled dust clouds that contained herbicides. As a result of this herbicide agent exposure, he says that post-service he developed a presumptive herbicide-related condition - ischemic heart disease. 

Upon review of the evidence of record, the Board grants the appeal for ischemic heart disease as due to herbicide (Agent Orange) exposure. 

At the outset, in the May 2018 rating decision on appeal and in the December 2019 SOC, the AOJ made four favorable findings pertinent to the coronary artery disease claim at issue:

(1) Coronary artery disease (ischemic heart disease) is one of the diseases associated with herbicide exposure for purposes of the presumption. 38 U.S.C. § 1116(a)(2)(H); 38 C.F.R. § 3.309(e). That is, VA has determined that a positive association exists between exposure to an herbicide agent and coronary artery disease. 

(2) The Veteran served for 90 days or more continuously during a period of war after December 31, 1946, thus meeting the minimum service requirements for presumptive service connection. 38 U.S.C. § 1112(a); 38 C.F.R. § 3.307(a)(1). 

(3) There is probative evidence that the Veteran meets the threshold criterion for service connection of a current cardiovascular disability. See 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Specifically, a March 2018 VA Ischemic Heart Disease Disability Benefit Questionnaire (VA Form 21-0960A-1) from a private physician diagnosed the Veteran with coronary artery disease and status post coronary stent surgery. In addition, May 2018 VA treatment records list chronic ischemic heart disease, demonstrated by cardiac catheterization, as a current active problem. 

(4) Service personnel records (SPRs) confirm the Veteran served at Korat AFB in Thailand during active service with the U.S. Army from July 12, 1969 to May 1, 1970. In addition, in a June 2016 DPRIS report, the Joint Services Records Research Center (JSRRC) reviewed the unit history for the 561st Engineer Company and 809th Engineer Battalion during the time of the Veteran's assignment in Thailand. JSRRC confirmed that the 561st Engineer Company began a major project along the Perimeter Road at Korat AFB in 1969 and 1970. SPRs further document that the Veteran was a vehicle driver at Korat AFB during that timeframe. 

In summary, the Board is bound by the above favorable findings of the AOJ. See 38 C.F.R. §§ 3.103(f)(4), 3.104(c), 20.801(a). 

As noted above, ischemic heart disease is one of the diseases associated with herbicide exposure for purposes of the presumption. 38 U.S.C. § 1116(a)(2); 38 C.F.R. § 3.309(e). The presumption of service connection requires exposure to an herbicide agent and manifestation of ischemic heart disease to a degree of 10 percent or more any time after service. 38 C.F.R. § 3.307(a)(6)(ii). Under the applicable VA regulation listing the diseases associated with herbicide exposure, ischemic heart disease includes, but is not limited to: acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina). See 38 C.F.R. § 3.309(e). 

With regard to presumptive service connection, VA treatment records dated in 2018 confirm the Veteran was diagnosed with ischemic heart disease, manifest to a degree of at least 10 percent or more after service. 38 C.F.R. § 3.307(a)(6)(ii). That is, VA treatment records dated in 2018 and a March 2018 VA Ischemic Heart Disease Disability Benefit Questionnaire (VA Form 21-0960A-1) from a private physician indicate that the Veteran's ischemic heart disease is treated with continuous medications. See 38 C.F.R. § 4.104, Diagnostic Code 7005 (arteriosclerotic heart disease / coronary artery disease). Therefore, the Veteran has ischemic heart disease manifest to a degree of at least 10 percent, one of the disorders associated with herbicide exposure for purposes of this presumption. 38 U.S.C. § 1116(a)(2); 38 C.F.R. § 3.309(e).

With regard to presumptive service connection based on service in Vietnam, the Veteran's SPRs, including his DD Form 214, as well as the Veteran's lay statements, do not establish any service in the Republic of Vietnam during the Vietnam era, or in or near the Korean DMZ from 1968 to 1971. That is, he did not serve on the landmass, inland waterways, or in the territorial sea extending 12 nautical miles from the shores of the Republic of Vietnam. See 38 U.S.C. § 1116A(d). Procopio v. Wilkie, 913 F.3d 1371, 1380-81 (Fed. Cir. 2019) (en banc). Therefore, the Veteran is not presumed to have been exposed to herbicides, including Agent Orange, on the basis of any Vietnam or Korean DMZ service. 38 U.S.C. § 1116(a); 38 C.F.R. §§ 3.307(a)(6)(iii), (iv); 3.313(a). 

However, the presumption of service connection for herbicide-related diseases could apply if exposure to an herbicide agent is shown at another location on a factual basis. VA policy provides that if the Veteran did not serve in Vietnam during the Vietnam Era or the Korean DMZ in a particular unit during the required timeframe, actual exposure to herbicides must be verified through appropriate service department or other sources in order for the presumption of service connection for an herbicide-related diseased under 38 C.F.R. § 3.309(e) to be applicable. Exposure to an herbicide agent is not presumed in such instances, but the exposure to one of the herbicide agents listed at 38 C.F.R. § 3.307(a)(6)(i) can still be established if shown by the facts of the case. Once exposure to an herbicide agent has been established by the facts of the case, the presumption of service connection found in 38 C.F.R. § 3.309(e) for herbicide-related diseases is applicable. 

The term "herbicide agent" means a chemical in an herbicide used in support of the United States and allied military operations in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, specifically: 2,4-D; 2,4,5-T and its contaminant TCDD; cacodylic acid; and picloram. 38 U.S.C. § 1116(a)(3); 38 C.F.R. § 3.307(a)(6)(i). 

Therefore, the central issue in the present case is whether or not the Veteran was exposed to herbicide agents while stationed at Korat AFB in Thailand with the U.S. Army in 1969 and 1970. 

In this regard, the Board must determine, as a question of fact, both the weight and credibility of the evidence. See Southall-Norman v. McDonald, 28 Vet. App. 346, 356 (2016). Equal weight is not accorded to each piece of evidence contained in a record; every item does not have the same probative value. The Board must account for the evidence which it finds to be persuasive or unpersuasive, analyze the credibility and probative value of all material evidence submitted by and on behalf of a claimant, and provide the reasons for its rejection of any such evidence. See Struck v. Brown, 9 Vet. App. 145, 152 (1996); Caluza v. Brown, 7 Vet. App. 498, 506 (1995).

In the present case, the Board finds that the Veteran's exposure to a herbicide agent is established on a factual basis. In this regard, the following evidence of record is probative and persuasive in demonstrating Agent Orange or other herbicide agent exposure for the Veteran while stationed at Korat AFB in Thailand with the U.S. Army in 1969 and 1970: 

With regard to lay evidence of herbicide agent exposure, "[l]ay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person." 38 C.F.R. § 3.159(a)(2). It follows that a veteran is generally competent to report as to the location and circumstances of his or her service, to include what AFB they were at and whether their duties took them near the perimeter of a base. In this regard, the Veteran has competently and credibly described that his MOS work duties as a vehicle driver and as a member of the security platoon placed him close to the perimeter of the Korat AFB in 1969 and 1970. See 38 C.F.R. § 3.159(a)(2); Barr v. Nicholson, 21 Vet. App. 303, 307-09 (2007) (observing that once evidence is determined to be competent, the Board must determine whether such evidence is also credible). 

What's more, his lay assertions and hearing testimony are internally consistent and also corroborated by other documentary evidence of record, as will be discussed in further detail below. See Bardwell v. Shinseki, 24 Vet. App. 36, 40 (2010) (lay statements asserting exposure to herbicide agents corroborated by other evidence of record are sufficient to establish actual exposure). The Veteran credibly testified at the March 2021 hearing that while working as a vehicle driver on a daily basis for seven to eight months he drove various heavy duty trucks and bulldozers in order to build a road around the perimeter of Korat AFB. This perimeter had been previously defoliated with commercial and / or tactical herbicides. In the process of constantly removing and digging the topsoil and vegetation within 100 yards outside the perimeter of the base, he inhaled dust clouds that contained herbicides. The Veteran has also submitted probative photographs and maps of the perimeter of Korat AFB in Thailand. His lay statements and testimony regarding his frequent contact with the perimeter of Korat AFB are consistent with the "places, types, and circumstances" of his service in the Army in Thailand from 1969 to 1970. See 38 U.S.C. § 1154(a); 38 C.F.R. § 3.303(a). His lay statements are also uncontroverted and consistent with the general information contained in his service records and in other documentary evidence, which will be discussed below. See also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) (noting that the Board, as fact finder, is responsible for assessing the credibility, competence, and probative value of evidence). 

A SPR "overseas service" record confirms that the Veteran served at Korat AFB in Thailand from July 12, 1969 to May 1, 1970. An SPR "record of assignments" indicates that the Veteran had a MOS of a vehicle driver from July 12, 1969 to February 28, 1970 while assigned to the 561st Engr Co (CONST) USARPAC-Thailand. Another SPR "record of assignments" indicates the Veteran had a MOS in a security platoon from February 28, 1970 to May 1, 1970 while assigned to the HMS 7th Maint. BN. USARPAC-Thailand. Thus, the Veteran's SPRs corroborate that his MOS duties as a truck driver and as a security person "regularly" placed the Veteran on the perimeter of the Korat AFB from July 12, 1969 to May 1, 1970. His official service records provide support to the Veteran's lay assertions on the matter of his regular, frequent, and routine perimeter duties at Korat AFB based on his MOS. 

In addition, a June 2016 DPRIS response for Agent Orange exposure from the Joint Services Records Research Center (JSRRC) noted that the JSRRC had reviewed the unit histories submitted by the 561st Engineer Company (561st Eng. Co.) (Construction) and by the 809th Engineer Battalion (809th Eng. Bn.) (Construction) (higher headquarters). These unit records documented the unit began a major project, the Perimeter Road at the Korat AFB in 1969 and 1970. In January 1970, the earth moving platoon rejoined the company and stepped up the process on the road. A completion date of January 1970 was met ending the construction work of the 561st Engineer Company. Therefore, the June 2016 DPRIS response from the JSRRC provides some corroboratory evidence that the Veteran's unit was performing road work on the perimeter of Korat AFB in late 1969 and early 1970. 

In addition, a June 2016 VA Memorandum on herbicide use in Thailand during the Vietnam Era noted that the Compensation and Pension Service (C&P) had reviewed a listing of herbicide use and test sites outside Vietnam provided to their office by the Department of Defense (DoD). This list contains 71 sites within the U.S. and in foreign countries where tactical herbicides, such as Agent Orange, were used, tested, or stored. The list does not contain names of individuals. Additionally, it does not contain any references to routine base maintenance activities such as range management, brush clearing, weed killing, etc., because these vegetation control activities were conducted by the Base Civil Engineer and involved the use of "commercial" herbicides approved by the Armed Forces Pest Control Board. The application of "commercial" herbicides on military installations was conducted by certified applicators. DoD has advised that "commercial" herbicides were routinely purchased by the Base Civil Engineer under federal guidelines and that records of these procurements were generally kept no longer than two years. C&P also reviewed a series of official DoD monographs describing in detail the use, testing, and storage of herbicides at various foreign and domestic locations. In addition, the Project CHECO Southeast Asia Report: Base Defense in Thailand, produced during the Vietnam era, was reviewed. 

C&P in the above June 2016 VA Memorandum further observed that "tactical" herbicides, such as Agent Orange, were used and stored in Vietnam, but not Thailand. There were records indicating that commercial herbicides were frequently used for vegetation control within the perimeters of air bases during the Vietnam era, but all such use required approval of both the Armed Forces Pest Control Board and the Base Civil Engineer. Base Civil Engineers were not permitted to purchase or apply "tactical" herbicides. While the Thailand CHECO Report did not report the use of "tactical" herbicides on allied bases in Thailand, it did indicate sporadic use of non-tactical (commercial) herbicides within fenced perimeters. Therefore, C&P concluded that if a veteran's MOS or unit is one that regularly had contact with the base perimeter, there was a greater likelihood of exposure to "commercial" pesticides, including herbicides. Security police units were known to have walked the perimeters, especially dog handlers. If the veteran's claim is based on general herbicide use within the base, such as small-scale brush or weed clearing activity along the flight line or around living quarters, there are no records of such activity involving "tactical" herbicides, only the "commercial" herbicides that would have been approved by the Armed Forces Pest Control Board and sprayed under the control of the Base Civil Engineer. Regardless, the Court has pointed out that "VA Compensation Service has acknowledged that there is 'some evidence that the herbicides used on the Thailand base perimeters may have been either tactical, procured from Vietnam, or a commercial variant of much greater strength and with characteristics of tactical herbicides.'" Parseeya-Picchione v. McDonald, 28 Vet. App. 171, 177 (2016) (emphasis added) (quoting COMP. & PENSION SERV. BULL. (U.S. Dep't of Veterans Affairs, Washington, D.C.), May 2010, at 3). It follows that for purposes of presumptive service connection for an herbicide-related disease, the Board will not distinguish between the Veteran's in-service exposure to tactical vs. commercial herbicide agents on the perimeter of Korat AFB in Thailand. 

In addition, a November 2016 official VA Public Health website article on Thailand military bases and Agent Orange exposure submitted by the Veteran provided that exposure to herbicides may be confirmed if a veteran is involved in duty on or near the perimeters of military bases in Thailand anytime between February 1961 to May 1975. This list includes U.S. Army veterans who provided perimeter security on RTAF bases in Thailand between February 1961 and May 1975 (such as the Veteran in the present case). These veterans must show on a factual basis that they were exposed to herbicides by evidence of daily work duties, performance evaluation reports, or other credible evidence. A declassified DoD report written in 1973 - Project CHECO Southeast Asia Report: Base Defense in Thailand 1968 1972, contains evidence that there was a significant use of herbicides on the fenced in perimeters of military bases in Thailand to remove foliage that provided cover for enemy forces. VA determined that herbicides used on the Thailand base perimeters "may have been tactical" and procured from Vietnam, or a strong commercial type "resembling" tactical herbicides. Thus, a veteran may be eligible for disability compensation related to Agent Orange exposure on this basis if he served during the Vietnam era in a work duty that placed him near the perimeter of a base in Thailand (such as the current Veteran in the present case). 

In addition, per the M21-1 (currently being reorganized by VBA), specific to Royal Thai Air Force Bases (RTAFBs) Herbicide Agent Cases, herbicide exposure is conceded if a veteran served in Thailand during the Vietnam era at specific RTAFBs as an Air Force security policeman, security patrol dog handler, member of the security police squadron, or "otherwise near the air base perimeter as shown by evidence of daily work duties, performance evaluation reports, or other credible evidence." See M21-1, IV.ii.1.H.4.b (December 31, 2019). That is, C&P has determined that a special consideration of herbicide exposure on a factual basis should be extended to veterans whose duties placed them on or near the perimeters of Thailand military bases. Id. at Block a. The M21-1 clarifies that for "Army Veterans" who served on RTAFBs in Thailand, VA should concede herbicide exposure on a direct or facts-found basis if the veteran (1) provides a statement that he was involved in perimeter security duty, and (2) there is additional credible evidence supporting this statement. Id. at Block b. In the instant case, the Veteran's SPRs confirm his MOS was in a security platoon for a few months from February 28, 1970 to May 1, 1970 while assigned to the HMS 7th Maint. BN. USARPAC-Thailand. The Veteran adds that his duties included perimeter security duty during this timeframe. 

With regard to the above favorable M21-1 provisions, while the Board is not bound by the M21-1, it must discuss any relevant provisions. Overton v. Wilkie, 30 Vet. App. 257, 264 (2018); see also 38 U.S.C. § 7104(c). More recently, the Court has emphasized that the M21-1 constitutes a "relevant factor" and so the Board cannot ignore the M21-1 in its analysis but must instead provide reasoning for declining to follow the provision. See Healy v. McDonough, 33 Vet. App. 312, 320 (2021). In the present case, the relevant M21-1 provisions support the current balance of the evidence being in the Veteran's favor. Thus, its provisions cannot be ignored. 

In light of the above evidence, the Board concludes that the Veteran's exposure to herbicide agents in Thailand is established on a factual basis. In summary, since the Veteran now meets all the requirements of 38 U.S.C. § 1116, he is entitled to service connection for ischemic heart disease on a presumptive basis as an herbicide-related disease under 38 C.F.R. § 3.309(e). 

Accordingly, the evidence supports presumptive service connection for ischemic heart disease due to herbicide (Agent Orange) exposure while stationed in Thailand. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. This claim is granted.

 

 

DAVID L. WIGHT

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board P.S. Rubin, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.