# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 22-6609

JACOB BANSCHBACH, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 25, 2024                                    Decided July 26, 2024)

     *Kenneth M. Carpenter* and *Kenneth H. Dojaquez*, both of Topeka, Kansas, argued for the appellant. *Mark D. Matthews*, of Seminole, Florida, was on the brief for the appellant.

     *Gilles Sadak*, with whom *Richard J. Hipolit,* Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *James B. Cowden*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

     Before PIETSCH, TOTH, and FALVEY, *Judges*.

     TOTH, *Judge*: While serving in the Army, Jacob Banschbach underwent hernia surgery. As relevant here, Mr. Banschbach is service connected for paralysis of the ilio-inguinal nerve under diagnostic code 8530 as a residual of his in-service hernia repair.[1] On appeal to this Court, he asserts that the Board failed to address reasonably raised issues of separate ratings for neuritis of his left ilio-inguinal nerve under diagnostic code 8630 and for neuralgia of his left ilio-inguinal nerve under diagnostic code 8730.The Secretary counters that, under relevant regulations, the veteran's paralysis rating already encompasses neuritis and neuralgia symptoms, so separate ratings for all three conditions are prohibited by the rule against pyramiding. We sent this case to panel to determine whether separate evaluations for paralysis, neuritis, and neuralgia are

---

[1] The July 2022 Board decision on appeal denied entitlement to higher ratings for left recurrent hernia residuals, scar, and incomplete paralysis of the left ilio-inguinal nerve. Mr. Banschbach does not appeal the 10% rating assigned for his recurrent left inguinal hernia or the 0% rating before March 28, 2012, and 10% rating from that date for a scar and nerve injury (that is, incomplete paralysis of the left ilio-inguinal nerve) from the hernia repair. The Court thus deems those issues abandoned. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc). Additionally, the Board remanded the issues of entitlement to separate ratings for residuals of left inguinal hernia, other than a scar and ilio-inguinal and anterior crural nerve injuries associated with left inguinal hernia, and to a total disability rating based on individual unemployability. The Court does not have jurisdiction over these issues. *See Kirkpatrick v. Nicholson*, 417 F.3d 1361, 1364 (Fed. Cir. 2005).

permissible under the relevant diagnostic codes or whether they are prohibited under the rule against pyramiding.

Because the relevant diagnostic codes should not be read to prohibit separate ratings for paralysis, neuralgia, and neuritis, it is premature to consider what role, if any, the rule against pyramiding may play in this case. And because the Court agrees that the record raised the issue, the Board should have addressed whether Mr. Banschbach is entitled to separate ratings for neuritis or neuralgia (or both) for either period on appeal. The Court remands for the Board to do so.

## I. BACKGROUND

Mr. Banschbach, who served from March to October 2006, suffered an inguinal hernia during service and underwent surgery; he is now service connected for his hernia and related damage to his ilio-inguinal and anterior crural nerves. We referred this matter to a panel to resolve the question posed by the Secretary: whether separate ratings for paralysis, neuritis, and neuralgia of the same nerve are prohibited as a matter of law by the rating schedule and the rule against pyramiding.

The facts of this case implicate numerous diagnostic codes; for clarity, we list the most relevant below.

| Regulation | Diagnostic Code (DC) | Description |
|---|---|---|
| 38 C.F.R. § 4.118 | DC 7804 | Unstable or painful scar(s) |
| 38 C.F.R. § 4.124a | DC 8526 | Paralysis of the anterior crural nerve (femoral) |
| | DC 8530 | Paralysis of the ilio-inguinal nerve |
| | DC 8630 | Neuritis of the ilio-inguinal nerve |
| | DC 8730 | Neuralgia of the ilio-inguinal nerve |

The procedural history is complex. Shortly after service, Mr. Banschbach filed a claim for service connection for pain and residuals from his hernia surgery. In an October 2007 rating decision, VA granted service connection for "residuals of left inguinal hernia repair to include numbness of scar area and pain in left testicle and groin." R. at 3510. It assigned a 10% rating under hyphenated diagnostic code 7338 (Hernia, inguinal)-8626 (neuritis of the anterior crural

2

nerve (femoral)). In a September 2011 rating decision, VA revised Mr. Banschbach's rating to 10% for his ilio-inguinal nerve injury (incomplete paralysis) and unstable or painful scar under diagnostic codes 8530-7804. In 2017, the Board discontinued the veteran's rating under diagnostic code 8530 and replaced it with a 20% rating under diagnostic code 8526 for incomplete paralysis of the anterior crural nerve, reasoning that this maximized Mr. Banschbach's benefits. He appealed that decision to this Court, which resulted in the Court granting a joint motion for remand (JMR) that, as relevant here, recognized that the Board should have addressed whether the veteran could be awarded separate ratings for paralysis of the ilio-inguinal nerve (diagnostic code 8530) and anterior crural nerve (diagnostic code 8526).

In the July 2022 decision on appeal, the Board appeared to acknowledge that Mr. Banschbach was entitled to separate ratings for his left ilio-inguinal and anterior crural nerve injuries, given that it noted that his service-connected disabilities included a 10% rating for recurrent left inguinal hernia; a noncompensable rating for scar and left ilio-inguinal nerve injury prior to March 28, 2012, and a 10% rating thereafter; and a 20% rating for incomplete paralysis of the anterior crural nerve.[2] It noted further that the question of the appropriate rating for incomplete paralysis of the anterior crural nerve was not on appeal and limited its discussion of nerve injury to the ilio-inguinal nerve. It found that the veteran was already in receipt of the maximum rating for ilio-inguinal nerve injury under diagnostic code 8530 for the period beginning March 2012. For the earlier period, it ruled that the VA exams of record all showed mild incomplete paralysis, so an initial compensable rating under diagnostic code 8530 was not warranted. Leaning heavily on these exams, the Board denied a higher rating for both periods.

Mr. Banschbach does not contest these findings but argues instead that the Board erred by failing to address the reasonably raised issues of whether he was entitled to separate ratings for neuritis and neuralgia for his ilio-inguinal nerve injury under diagnostic codes 8630 and 8730, respectively. Focusing on the method by which nerve conditions are evaluated, the Secretary counters that any alleged error by the Board was harmless because separate ratings for neuritis,

---

[2] Confusing matters, the Board then stated that "[p]er the JMR, whether separate ratings are warranted for paralysis of both ilio-inguinal nerve and anterior crural nerve … are addressed in the Remand below." This appears to be scrivener's error, though, as the Board had already seemed to acknowledge that separate ratings for ilio-inguinal nerve and anterior crural nerve injuries were warranted. Additionally, the Remand section of the Board's decision directs the agency of original jurisdiction to address whether Mr. Banschbach was entitled to "separate ratings for residuals of left inguinal hernia, *other than* a scar and ilio-inguinal and anterior crural nerve injuries associated with left inguinal hernia." (emphasis added). Thus, on remand, the Board should clarify all of the veteran's current ratings.

3

neuralgia, and paralysis of the same nerve are prohibited. Per the Secretary, the relevant regulations, 38 C.F.R. §§ 4.123 and 4.124, direct adjudicators to rate neuritis and neuralgia "pursuant to the degree of 'paralysis of the affected nerve.'" Secretary's Br. at 10, quoting 38 C.F.R. §§ 4.123, 4.124. Under the Secretary's reading, the regulations' language linking the conditions to a paralysis scale means that neuritis and neuralgia are, for rating purposes, subsumed by an already extant paralysis rating. Consequently, he maintains that awarding the veteran separate neuritis and neuralgia ratings would constitute impermissible pyramiding as the veteran already has a rating for paralysis under diagnostic code 8530. Tying all this together, the Secretary reasons that a veteran in receipt of a paralysis rating for a peripheral nerve under § 4.124a is categorically precluded by the rule against pyramiding from receiving separate ratings for neuritis and neuralgia of the same nerve.

## II. ANALYSIS

### A.

Regulatory interpretation is a legal question that this Court reviews de novo. *Langdon v. Wilkie*, 32 Vet.App. 291, 296 (2020). And we always begin with the language of the regulation, "the plain meaning of which is derived from its text and its structure." *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015). We must give regulatory words "their 'ordinary, contemporary, common meaning,'" absent an indication that the words "bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431 (2000) (quoting *Walters v. Metro. Ed. Enters., Inc.*, 519 U.S. 202, 207 (1997)). "If the plain meaning of [the regulation] is clear from its text and structure, then that meaning controls and that is the end of the matter." *Atencio v. O'Rourke*, 30 Vet.App. 74, 82 (2018).

Section 4.124a broadly sets out the rating schedule for neurological conditions and convulsive disorders. "Diseases of the Peripheral Nerves" stands as a subcategory and contains the respective diagnostic codes for 21 different peripheral nerves as well as a diagnostic code for soft tissue sarcoma. Each of the 21 peripheral nerves reflects the same structure—it (1) lists the nerve involved; (2) provides a diagnostic code and rating scale for "Paralysis of" that nerve; and (3) lists a diagnostic code but no rating scale for "Neuritis" and "Neuralgia" of that nerve. 38 C.F.R. § 4.124a (2024). Included among the peripheral nerves is the diagnostic code for the ilio-inguinal nerve, which we focus on.  The diagnostic code is reproduced below.

4

| Ilio-inguinal nerve | |
|---|---|
| 8530 Paralysis of: | |
| Severe to complete | 10 |
| Mild or moderate | 0 |
| 8630 Neuritis. | |
| 8730 Neuralgia. | |

The rating schedule provides some guidance on how to differentiate incomplete and complete paralysis, providing that "'incomplete paralysis' . . . indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration." *Id.* The Diseases of the Peripheral Nerves subcategory further provides that, "[w]hen the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree." *Id.*

As for neuritis and neuralgia, §§ 4.123 and 4.124 explain how those conditions should be rated under § 4.124a. Cranial or peripheral neuritis is "characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating" and "is to be rated on the scale provided for injury of the nerve involved, with a maximum equal to severe, incomplete, paralysis." 38 C.F.R. § 4.123 (2024). The regulation further states that the "maximum rating which may be assigned for neuritis . . . will be that for moderate, or with sciatic nerve involvement, for moderately severe, incomplete paralysis." *Id.*

By contrast, § 4.124 establishes that cranial or peripheral neuralgia is "characterized usually by a dull and intermittent pain, of typical distribution so as to identify the nerve" and "is to be rated on the same scale, with a maximum equal to moderate incomplete paralysis." 38 C.F.R. § 4.124 (2024). The neuralgia regulation further advises that "[t]ic douloureux, or trifacial neuralgia, may be rated up to complete paralysis of the affected nerve." *Id.*

As already noted, both regulations direct the rater to the "scale provided for injury of the nerve involved," which, under § 4.124a, is the scale provided for paralysis. As to the ilio-inguinal nerve, diagnostic code 8530 provides a 0% rating for mild or moderate incomplete paralysis and a 10% rating for severe to complete paralysis. Adjacent to this, the schedule lists a diagnostic code for neuritis (diagnostic code 8630) and a diagnostic code for neuralgia (diagnostic code 8730). But again, no individual rating scale is provided for those conditions.

Also relevant here, VA's rating schedule requires that separate conditions or manifestations of the same condition be rated separately, unless otherwise provided in the ratings schedule. *See* 38 C.F.R. § 4.25(b) (2024). However, VA's "anti-pyramiding" provision instructs adjudicators to avoid "evaluation of the same disability under various diagnoses." 38 C.F.R. § 4.14 (2024). Taken together, these regulations state that separate ratings are required for separate conditions unless their symptomatology is duplicative or overlapping. *See Esteban v. Brown*, 6 Vet.App. 259, 262 (1994). For his part, the Secretary must grant "every benefit that can be supported in law while protecting the interests of the Government." 38 C.F.R. § 3.103(a) (2024). This requires the Board to "exhaust *all* schedular alternatives for rating a disability," including rating a single disability under multiple diagnostic codes, so long as doing so does not violate the rule against pyramiding. *Morgan v. Wilkie*, 31 Vet.App. 162, 168 (2019).

## B.

The crux of the dispute in this case centers on what to make of the language in §§ 4.123 and 4.124 directing adjudicators to assess neuritis and neuralgia according to the *scale provided* for paralysis. The Secretary insists that such language requires adjudicators to rate neuritis and neuralgia according to the degree of paralysis, so that neuritis- or neuralgia-related symptoms are compensated to the extent they cause paralysis, whether functional or actual. Under this rationale, separate ratings for neuritis and neuralgia amount to de facto pyramiding because they would doubly compensate symptoms already accounted for by the paralysis rating. Mr. Banschbach, in turn, argues that this language signifies only that, when assessing whether or how to compensate for neuritis and neuralgia, adjudicators employ the percentage scale operative for paralysis.

The Court agrees that the plain meaning and context both favor Mr. Banschbach's more literal reading, whereby the regulations merely require adjudicators to employ the rating scale for paralysis when assessing the appropriate ratings for neuritis and neuralgia. For starters, the phrase "degree of paralysis" appears nowhere in the relevant regulations. The Secretary offers no compelling reason to read into the regulations a term that, as discussed further below, would limit compensation of separate and distinct symptoms. *See Southall-Norman v. McDonald*, 28 Vet.App. 346, 352 (2016) (concluding that a regulation was clear on its face and rejecting "the Secretary's attempts to read into the regulation a limitation to its applicability that is simply not there"). The Secretary's reading is further undermined by the regulations' silence on the prohibition of separate ratings for these conditions. Section 4.25(b) mandates that "*[e]xcept as otherwise provided in this*

*schedule*, the disabilities arising from a single disease entity . . . are to be rated separately as are all other disabling conditions." 38 C.F.R. § 4.25(b) (emphasis added). Section 4.14, the anti-pyramiding provision, notes that, because nerve disabilities "may overlap to a great extent," "special rules are included in the appropriate bodily system for their evaluation." 38 C.F.R. § 4.14. Tellingly, §§ 4.123, 4.124, and 4.124a contain no prohibition on separate ratings or other special rules related to neuritis, neuralgia, and paralysis.

Further, Mr. Banschbach's reading falls neatly in line with the regulations' different characterization of each condition. Neuralgia is marked by "dull and intermittent pain," whereas neuritis manifests via "loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating;" in comparison, paralysis is characterized by "loss of function." 38 C.F.R. §§ 4.123, 4.124, 4.124a. Each is uniquely defined, indicating that each may present separately ratable manifestations. To be sure, there may be overlap, even significantly so, based on how various conditions present themselves in an individual case, but that has no bearing on whether a veteran meets the diagnostic criteria for a particular condition.

Most importantly, the Court cannot accept the Secretary's reading of the relevant regulations because it renders superfluous the inclusion of neuralgia and neuritis as ratable disabilities for each individual peripheral nerve. *See Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006) ("[T]he VA . . . regulatory scheme should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.") (internal quotation removed)). The defect in such reading is obvious: it effectively collapses the three discrete diagnostic codes relating to a peripheral nerve into a single, mono-dimensional rating centered exclusively on paralysis. Such a reading not only renders separate diagnostic codes for neuritis and neuralgia superfluous, but it also immediately falls afoul of § 4.25(b)'s mandate that separate disabilities are to be rated separately.

The Secretary's reading also runs counter to our longstanding caselaw about how separate conditions are evaluated. *Esteban* sets out this guidance most clearly, counseling that conditions are to be rated separately unless they can be shown to be the "'same disability' or the 'same manifestation' under various diagnoses." 6 Vet.App. at 261. Notice the implicit sequence that *Esteban* spells out: adjudicators must first evaluate the ratable conditions and only afterward assess whether the compensable conditions present the "same manifestation" such that a veteran might

7

be paid twice for the "same disability." *Id.* By contrast, the Secretary's reading here inverts *Esteban's* sequence and requires adjudicators to first identify and eliminate potentially overlapping symptoms and only then evaluate the remaining conditions under the ratings schedule to see if they warrant compensation. This is backwards.

The "critical element" of the anti-pyramiding provision, *Esteban* observed, "is that *none* of the symptomatology" for any condition "is *duplicative* of or *overlapping* with the symptomatology of" another condition. 6 Vet.App. at 262. This determination, by its nature, requires a thorough assessment of the facts. Here, if it can be shown that separate ratings for neuritis and neuralgia would end up compensating "the same manifestation under different diagnoses," 38 C.F.R. § 4.14, then the anti-pyramiding provision may prove relevant. Right now, with no factual findings on the matter, it's too early to tell.

Thus, the Court discerns nothing in the rating schedule or related regulations that prohibits consideration of separate ratings for neuritis or neuralgia of a peripheral nerve when a veteran is rated for paralysis of the same nerve under § 4.124a. If VA wishes that to be the case, it has regulatory power at its disposal to enact such a change.[3] Accordingly, we conclude that assignment of a paralysis rating under § 4.124a does not preclude as a matter of law separate evaluations for neuritis and neuralgia of the same nerve.

## C.

The record is clear that Mr. Banschbach's entitlement to separate ratings for neuritis and neuralgia was reasonably raised such that remand is warranted for the Board to address these matters in the first instance. *See Morgan*, 31 Vet.App. at 168. This Court "has jurisdiction to determine in the first instance whether the record reasonably raised a particular issue." *Garner v. Tran*, 33 Vet.App. 241, 247 (2021). There are a variety of factual scenarios in which an issue can be raised by the record but, generally speaking, VA must identify and adjudicate an issue when "there is *some* evidence in the record which *draws an association* or *suggests a relationship*" between the veteran's current symptoms and service or another service-connected disability. *Id.* at 249.

---

[3] To the extent that the Secretary reads the *VA Adjudication Procedures Manual* (M21-1) as prohibiting consideration of separate ratings for neuritis, neuralgia, and paralysis of the same lower extremity nerve, this is inconsistent with its currently promulgated regulations. M21-1, Pt. V, subpt. iii, ch. 12, sec. A.2.f (last updated Apr. 16, 2020).

In this case, the record is replete with evidence of the veteran reporting pain—a symptom specifically listed in the regulations as characterizing neuritis and neuralgia. *See* 38 C.F.R. §§ 4.123, 4.124. A medication list within a June 2010 VA treatment record noted that the veteran takes gabapentin "for neuritis/pain relief." R. at 931. A July 2010 VA treatment record reported that the "veteran has neuralgia." R. at 890. Then, the 2012 VA examiner noted that the veteran had "[c]hronic inguinal pain" due to his in-service hernia repair and Mr. Banschbach reported "pain" and "[n]erve and inflammation pain" in the inguinal area. R. at 2522. At the 2016 VA exam, the veteran reported "pinching shooting nerve pain" that he related to his ilio-inguinal nerve injury. R. at 1148. He also stated that he was prescribed three medications for his pain, and the examiner marked that the veteran experienced mild intermittent pain in his left leg. *Id.*

Based on this evidence, the issues of separate ratings for neuritis and neuralgia were reasonably raised by the record. Not only are there repeated notations of pain during examinations of Mr. Banschbach's ilio-inguinal nerve, but there are treatment notes documenting both neuritis and neuralgia diagnoses. The veteran related his nerve pain to his ilio-inguinal nerve injury at the 2016 exam. Thus, the Board should have addressed whether Mr. Banschbach could receive separate ratings for neuritis and neuralgia under diagnostic codes 8630 and 8730, respectively. Accordingly, remand is warranted for the Board to do so in the first instance and for the Board to clarify Mr. Banschbach's ratings as discussed in note 2, *infra*. *See Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) (stating that "appellate tribunals are not appropriate fora for initial fact finding").

### III. CONCLUSION

Based on the foregoing, the Board's July 13, 2022, decision, to the extent that it failed to address entitlement to separate ratings for neuritis and neuralgia of the left ilio-inguinal nerve, is VACATED, and these matters are REMANDED for further adjudication consistent with this opinion. The balance of the appeal is DISMISSED.